**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**


The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

/FILE\
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE_____

*Madsen, C.J.*
CHIEF JUSTICE

This opinion was filed for record

at _8:00 am_ on _Sept 1, 2016_

SUSAN L. CARLSON
Supreme Court Clerk

IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| N.L., | ) | No. 91775-2 |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | En Banc |
| | ) | |
| BETHEL SCHOOL DISTRICT, | ) | |
| | ) | Filed _____ |
| Petitioner. | ) | |
| | ) | |

GONZÁLEZ, J.—N.L. met Nicholas Clark at school track practice. She was 14, and he was 18. Both were students in the Bethel School District. Neither N.L. nor any responsible adult on the field knew that Clark was a registered sex offender who had previously sexually assaulted a younger girl who had been about N.L.'s age at the time. The Pierce County Sheriff's Department had informed Clark's school principal of his sex offender status, but the principal took no action in response. Clark persuaded N.L. to leave campus with him and raped her. N.L. sued the district, alleging negligence. We must decide whether Bethel School District's duty to N.L. ended when she left campus and whether its alleged negligence, as a matter of law, was

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

not a proximate cause of her injury. The answer to both questions is no. We affirm.

FACTS

N.L. ran track for Bethel Junior High School. Clark ran track for Bethel High School's varsity team. The two schools share the track field between them, and on April 24, 2007, the junior and senior high schools were both using the field for practice. N.L. alleges that Clark acted as a coach and mentor to the younger students on both schools' teams. During practice, a mutual friend introduced N.L. to Clark. The two exchanged phone numbers and started exchanging text messages. Clark told N.L. he was 16 years old. He invited her to lunch after school the next day. Unbeknown to either the junior or senior high school track coach or apparently any other district employee on the field that day, Clark was a registered sex offender.

The next day, Clark and N.L. skipped track practice with the intention, N.L. thought, of going to Burger King for lunch. They left campus in Clark's car. Clark drove past the Burger King, ostensibly to fetch

2

*N.L. v. Bethel School Dist.*, No. 91775-2

something he had forgotten at home. Instead, Clark took N.L. into his house and raped her.[1]

N.L. told a friend what Clark had done to her. The friend told her mother, who informed both the school and N.L.'s mother. The school called the police, and the next month, Clark was charged with third degree rape. Clark ultimately pleaded guilty to second degree assault.

Clark already had an extensive disciplinary history while in the Bethel School District by that day in April 2007. By the seventh grade, he had started making racial slurs and inappropriate sexual comments in class. This behavior escalated to physical assaults and sexual misconduct against younger female students. In June 2004, when Clark was 16, he sexually assaulted another student at Bethel Junior High School. Based on that assault, Clark was charged with indecent liberties and suspended for the rest of the school year. That October, Clark pleaded guilty to attempted indecent liberties, was sentenced to 12 months of community custody, and was required to register as a level one sex offender. Among other things, he was

---

[1]At several points, the district appears to challenge whether N.L. was raped. *E.g.*, Bethel Sch. Dist.'s Response Br. at 4, 6; Clerk's Papers (CP) at 52, 454-56. Since this case is before us on review of summary judgment, we need not resolve this dispute, but we note that N.L. was too young to consent to intercourse with Clark and that she has presented ample evidence that Clark raped her. RCW 9A.44.079; CP at 50, 60, 286. We have declined to allow school districts to attribute fault to students who are raped by their teachers. *Christensen v. Royal Sch. Dist. No. 160*, 156 Wn.2d 62, 67, 124 P.3d 283 (2005).

3

ordered to have no contact with people two or more years younger than himself. N.L. is four years younger than Clark.

That December, the Pierce County sheriff notified Bethel High School's principal that Clark was a registered sex offender. There is considerable evidence in the record that suggests the principal did not inform Clark's teachers, coaches, or relevant staff of Clark's status. The evidence also suggests that the principal did not develop a safety plan, let alone one that would have helped Clark avoid students two or more years younger than him. The record also suggests there was a district policy in place at the time that required the principal to inform Clark's teachers of his status. Clerk's Papers (CP) at 99 (citing District Policy 3143[2]); CP at 361-62, 420. The assistant principal testified he did not know of any such policy.

---

[2] The policy is not in the record. According to the "Bethel School District BoardDocs" webpage, Policy 3143 was adopted in 2003 and says:

> A court will notify the common school in which a student is enrolled if the student has been convicted, adjudicated, or entered into a diversion agreement for any of the following offenses: a violent offense, a sex offense, a firearms offense, inhaling toxic fumes, a drug offense, liquor offense, assault, kidnapping, harassment, stalking or arson. The principal must inform any teacher of the student and any other personnel who should be aware of the information. The information may not be further disseminated.

Bethel School District Board Policy Manual, District Notification of Juvenile Offenders, Policy 3143 (2003), http://www.boarddocs.com/wa/bethel/Board.nsf/goto?open&id=9SQUU97DB74A [https://perma.cc/5MCV-3YJA]. The accuracy of this website has not been tested by the parties.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Former Superintendent of Public Instruction Judith Billings analyzed the district's practices around the time N.L. was raped. Superintendent Billings observed that "RCW and Bethel District policy require that the principal 'must inform any teacher of the student and any other personnel who should be aware of the information' of a student's sex offender status." CP at 300. She also noted that "[m]odel policies for Washington State, the standard of care recognized and implemented by most school districts – but not by Bethel – provides that 'other personnel' includes coaches and counselors, neither of whom were informed" of Clark's sex offender status. *Id.* She concluded, among other things, that "[t]he haphazard nature of Bethel's approach to keeping its students safe from registered sex predators frankly boggles the imagination," and that the district "fell unconscionably below the accepted standard of care 'to protect students from dangers that are known or should have been known.'" *Id.* at 302, 304.

In 2012, N.L. sued the Bethel School District for negligence on the grounds it had failed to take reasonable precautions to protect her from a known registered sex offender. The district moved for summary judgment, arguing that it had no duty to N.L. because she was not actually in its custody at the time she was raped and that N.L's "decision to skip track practice and leave campus with Clark were 'independent act[s]' that 'br[oke]

5

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

the chain of causation.'" CP at 20, 21 (alterations in original) (quoting

*Riojas v. Grant County Pub. Util. Dist.*, 117 Wn. App. 694, 697, 72 P.3d

1093 (2003)).

The trial judge noted in her oral ruling that "the issue is not so much

the duty as the causation element, and on that basis I'm going to dismiss the

case." Verbatim Tr. of Proceedings (Jan. 10, 2014) at 18. The Court of

Appeals reversed, finding the district had a duty of reasonable care to N.L.

and that there was a genuine issue of fact as to whether any breach of the

duty was a proximate cause of N.L.'s injury. *N.L. v. Bethel Sch. Dist.*, 187

Wn. App. 460, 463, 348 P.3d 1237 (2015). We granted the district's petition

for review. *N.L. v. Bethel Sch. Dist.*, 184 Wn.2d 1002, 357 P.3d 665 (2015).

We have received an amicus brief in support of the district from the

Washington State School Directors Association, the Association of

Washington School Principals, and the Washington Association of School

Administrators (WSSDA). The Washington State Association for Justice

Foundation submitted an amicus brief in support of N.L.

ANALYSIS

To prevail in her negligence suit, N.L. "must show (1) the existence of

a duty to the plaintiff, (2) a breach of that duty, (3) a resulting injury, and (4)

the breach as the proximate cause of the injury." *Crowe v. Gaston*, 134

6

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Wn.2d 509, 514, 951 P.2d 1118 (1998) (citing *Reynolds v. Hicks*, 134 Wn.2d 491, 495, 951 P.2d 761 (1998)). At this summary judgment stage, the district contests only the intertwined issues of duty and proximate cause. Thus, they are the only issues before us. CP at 20-21; *see also Lowman v. Wilbur*, 178 Wn.2d 165, 169, 309 P.3d 387 (2013) (citing *Hartley v. State*, 103 Wn.2d 768, 779-81, 698 P.2d 77 (1985)).

### 1. DUTY

Whether a duty exists is a question of law for the court. *Aba Sheikh v. Choe*, 156 Wn.2d 441, 448, 128 P.3d 574 (2006) (citing *Hertog v. City of Seattle*, 138 Wn.2d 265, 275, 979 P.2d 400 (1999)). "As a general rule, our common law imposes no duty to prevent a third person from causing physical injury to another." *Aba Sheikh*, 156 Wn.2d at 448 (citing RESTATEMENT (SECOND) OF TORTS § 315 (AM. LAW INST. 1965)). But such a duty can arise when "'a special relationship exists between the defendant and either the third party or the foreseeable victim of the third party's conduct.'" *Niece v. Elmview Grp. Home*, 131 Wn.2d 39, 43, 929 P.2d 420 (1997) (internal quotation marks omitted) (quoting *Hutchins v. 1001 Fourth Ave. Assocs.*, 116 Wn.2d 217, 227, 802 P.2d 1360 (1991)). "Intentional or criminal conduct may be foreseeable unless it is 'so highly extraordinary or improbable as to be wholly beyond the range of expectability.'" *Kok v.*

7

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Tacoma Sch. Dist. No. 10*, 179 Wn. App. 10, 18, 317 P.3d 481 (2013) (internal quotation marks omitted) (quoting *Niece*, 131 Wn.2d at 50).

Washington courts have long recognized that school districts have "an enhanced and solemn duty" of reasonable care to protect their students. *Christensen v. Royal Sch. Dist. No. 160*, 156 Wn.2d 62, 67, 124 P.3d 283 (2005). This includes the duty to protect their students from the foreseeable risk of harm the students may inflict on each other. *See McLeod v. Grant County Sch. Dist. No. 128*, 42 Wn.2d 316, 319-20, 255 P.2d 360 (1953) (citing *Briscoe v. Sch. Dist. No. 123*, 32 Wn.2d 353, 362, 201 P.2d 697 (1949)); *see also J.N. v. Bellingham Sch. Dist.*, 74 Wn. App. 49, 871 P.2d 1106 (1994). School districts have the duty "to exercise such care as an ordinarily responsible and prudent person would exercise under the same or similar circumstances." *Briscoe*, 32 Wn.2d at 362 (citing *Rice v. School Dist. No. 302*, 140 Wash. 189, 248 Pac. 388 (1926)). Based on *McLeod*, the district argues there are two necessary components to its duty to students: "[(1)] the harm was foreseeable *and* [(2)] the injury occurred in a custodial context." Suppl. Br. of Pet'r at 8 (citing *McLeod*, 42 Wn.2d at 319, 321).

The district is correct that in *McLeod*, we found a duty in part because the district's authority and obligations had been substituted for the parents' while the students were in the district's custody. *McLeod*, 42 Wn.2d at 319.

8

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

But *McLeod* does not suggest that a district's *liability* for breaches of that duty is cut off as soon as the student steps off campus.

In *McLeod* and the cases it relied on, the duty arose, and the injury occurred, while the student was in the district's custody. *McLeod*, 42 Wn.2d at 318; *see also Briscoe*, 32 Wn.2d at 355, 357 (district potentially liable for injuries that occurred during unsupervised recess); *Eckerson v. Ford's Prairie Sch. Dist. No. 11*, 3 Wn.2d 475, 483-84, 101 P.2d 345 (1940) (district properly held liable for negligent construction and supervision that resulted in injury after one child slammed door on another). During the noon recess, several students forced a 12-year-old girl into a small room off the gymnasium and raped her. *McLeod*, 42 Wn.2d at 318. The district had assigned a teacher to watch the students in the gymnasium specifically "for the purpose of protecting any students from being harmed by other students." *Id.* Unfortunately, that teacher "absented himself." *Id.* We allowed McLeod's negligence suit to go forward. *Id.* at 320. We noted the plaintiff was compelled to attend school and was under the "protective custody of teachers[, which] mandatorily substituted for that of the parent." *Id.* at 319. We found the rape "fell within a general field of danger which should have been anticipated" given the students' access to a dark and isolated room. *Id.* at 321, 322. We concluded that "the duty of a school

9

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

district . . . is to anticipate dangers which may reasonably be anticipated, and then to take precautions to protect the pupils in its custody from such dangers." *Id.* at 320.

*McLeod* establishes that school districts have a duty to protect the students in their custody from foreseeable dangers and that it is foreseeable that one student might rape another. 42 Wn.2d at 320, 322. The district insists that *McLeod* also *limits* school districts' duties in negligence to custodial situations. *See, e.g.*, Suppl. Br. of Pet'r at 1. The district seems to reason that since its duty arose from the fact that its care and custody had been mandatorily substituted for that of the parents', its duties must end when the student is no longer in its care and custody. *Id.* But while the district's *duty* to exercise reasonable care might end when the student leaves its custody, nothing in *McLeod* suggests that the district's *liability* for a breach of duty while the student was in its custody would be cut off merely because the harm did not occur until later.

The *McLeod* court had no occasion to consider whether the district's liability was cut off once the students left campus because both the harm and the district's alleged negligence happened while the students were squarely in the district's custody. Here, too, the duty arose while N.L. and Clark were in the district's custody. Similarly, the alleged breach in both *McLeod* (the

10

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*N.L. v. Bethel School Dist.*, No. 91775-2

failure to supervise) and here (failure to take adequate steps to protect students from a registered sex offender) occurred while the students were all still in the districts' custody.

Bethel also points to our opinion in *Coates v. Tacoma School District No. 10*, 55 Wn.2d 392, 396, 347 P.2d 1093 (1960), as support for the proposition that a school's duty of reasonable care to prevent injuries is limited to injuries that happen in the custodial context. Bethel Sch. Dist.'s Resp. Br. at 18-20. In *Coates*, a Tacoma student was injured in a drunk driving accident at 2:00 a.m. on a Sunday in Mason County, allegedly on his way home from a school club initiation that likely involved drinking. 55 Wn.2d at 393. The student sued, alleging failure to supervise. *Id.* at 394. He did not allege that the "club was a curricular or extracurricular activity of the school district" or that the district had appointed anyone to supervise it. *Id.* at 394-95. We dismissed the case on multiple grounds, including how distant the accident was from the school and the school day. *Id.* at 394-95. We observed that

> where the event causing the injuries is so distant in time and place from any normal school activity that it would be assumed that the protective custody was in the parents, unless facts and circumstances are alleged which extend the duty of the school district beyond the normal school district-student relationship.

11

*Id.* at 399. This is not the language of a per se rule that a district has a duty only to students who are in its custody when an injury caused by its negligence occurs. Instead, the court relied on the fact that the "events causing the injuries [was] so distant in time and place from any normal school activity" to relieve the school of liability, not that they were merely off campus. *Id.* Here, one of the alleged events causing N.L.'s injury is the fact the district took inadequate precautions to protect children from a known risk while on school grounds. We find this case is not analogous to *Coates*.

The district finds more support in a Court of Appeals opinion, *Scott v. Blanchet High Sch.*, 50 Wn. App. 37, 38, 44-45, 747 P.2d 1124 (1987). There, relying on *Coates*, the Court of Appeals found that a private high school was not liable for failing to supervise a student who had "sexual and romantic activities" with a teacher that grew out of after-school counseling. *Id.* at 38, 44-45. The court noted that "[a]t some point . . . the event is so distant in time and place that the responsibility for adequate supervision is with the parents rather than the school." *Id.* at 44-45 (citing *Coates*, 55 Wn.2d at 399). But *Scott* is not an opinion of this court, and again, "[a]t some point" is not the language of a per se rule requiring district custody during the injury for a duty to attach.

12

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

The district does not point to any case that clearly articulates its suggested rule, and we find none in our case law. The district is absolutely correct that "[f]or school pupils . . . the essential rationale for imposing a duty 'is that the victim is placed under the control and protection of the other party, the school, with resulting loss of control to protect himself or herself.'" *N.K. v. Corp. of Presiding Bishop of Church of Jesus Christ of Latter-Day Saints*, 175 Wn. App. 517, 532, 307 P.3d 730 (2013) (quoting *Hutchins v. 1001 Fourth Ave. Assocs.*, 116 Wn.2d 217, 228, 802 P.2d 1360 (1991)). But it does not follow that the victim must be in the school's custody at the time of the *injury* for the duty to have existed.

The California Supreme Court rejected a similar proposal some years ago. *See Hoyem v. Manhattan Beach City Sch. Dist.*, 22 Cal. 3d 508, 515, 585 P.2d 851, 150 Cal. Rptr. 1 (1978). "Contrary to [the district]'s assertion, no California decision suggests that when a school district fails to properly supervise a student on school premises, the district can automatically escape liability simply because the student's ultimate injury occurs off school property." *Id.* (citing *Calandri v. Ione Unified Sch. Dist.*, 219 Cal. App. 2d 542, 549-50, 33 Cal. Rptr. 333 (1963) (school district liable for injury student sustained at home as a result of dangerous instrument made in shop

13

*N.L. v. Bethel School Dist.*, No. 91775-2

class)). The court concluded that "the off-campus situs of an injury does not ipso facto bar recovery from a school district." *Id.*

While courts across the nation are divided, the California court is far from alone. The Maryland Supreme Court found that a school district had a duty to a student who had committed suicide off campus on a school holiday. *Eisel v. Bd. of Educ.*, 324 Md. 376, 377, 597 A.2d 447 (1991). There, the student had expressed suicidal thoughts to friends, who had reported it to school officials. School officials questioned the student but took no other action. Despite the fact the suicide took place off campus and not during school hours, the court let the wrongful death action go forward, noting that "[f]oreseeability is the most important variable in the duty calculus" and given what the district knew, the death was foreseeable. *Id.* at 386 (citing *Ashburn v. Anne Arundel County*, 306 Md. 617, 628, 510 A.2d 1078 (1986)). As the Idaho Supreme Court observed, "[A] school district may owe a duty to its students, despite the fact that injury occurred off of school grounds and outside of school hours." *Stoddart v. Pocatello Sch. Dist. #25*, 149 Idaho 679, 684, 239 P.3d 784 (2010) (citing *Brooks v. Logan*, 127 Idaho 484, 903 P.2d 73 (1995)).[3]

---

[3] Amici WSSDA et al. cites nine cases from Louisiana, New York, Idaho, and Florida for the proposition that school districts are not liable for student injuries outside of the custodial context. Br. of Am. Cur. WSSDA et al. at 12-16. It is correct that Louisiana

14

*N.L. v. Bethel School Dist.*, No. 91775-2

We hold that districts have a duty of reasonable care toward the students in their care to protect them from foreseeable dangers that could result from a breach of the district's duty. While the location of the injury is relevant to many elements of the tort, the mere fact the injury occurs off campus is not by itself determinative. As the Idaho Supreme Court noted in a somewhat similar case, "the relevant inquiry is to the location of the negligence rather than the location of the injury." *Id.* at 685. Whether the district breached its duty to take reasonable care to protect N.L. from Clark is a factual question in this case.[4]

In the alternative, the district argues that it had no duty in this case because, in its view, the harm was not foreseeable because N.L.'s "injury was the result of criminal conduct" and was "precipitated by her failure to

---

and New York have dismissed negligence cases on such grounds. *E.g.*, *S.J. v. Lafayette Par. Sch. Bd.*, 41 So. 3d 1119 (La. 2010); *Banks v. N.Y. City Dep't of Educ.*, 70 A.D.3d 988, 990, 895 N.Y.S.2d 512 (N.Y. App. Div. 2010). Florida does not have a per se rule, and, as discussed above, Idaho has rejected the proposition. *See Kazanjian v. Sch. Bd.*, 967 So. 2d 259, 266 (Fla. Dist. Ct. App. 2007).

[4] We respectfully disagree with the dissent that "[t]aken to its logical conclusion, if a school has notice of a student's violent tendencies, under the majority's view, it could be found liable for an off-campus, nonschool related assault." Dissent at 8. First, almost nothing in tort law is taken to its logical conclusion because there is almost always a countervailing principle. Second, in this case, taking the facts alleged as true (as we must at this stage), the district gave a registered sex offender the imprimatur of coach and mentor to younger students, knowing that he had previously preyed on young girls. The district put these children in danger without informing any responsible staff member of the sex offender's status, in apparent violation of its own policy. This is a far cry from simply knowing about a student's violent tendencies. Third, the alleged breach happened on campus, while the student was in the school district's custody. In the dissent's hyperbolic counterfactual, no breach of duty occurs on campus.

15

*N.L. v. Bethel School Dist.*, No. 91775-2

fulfill her obligations as a student" by skipping an after-school track practice. Suppl. Br. of Pet'r at 6. "Taken together," it contends, "the circumstances of the injury in this case are 'so highly . . . improbable as to be wholly beyond the range of expectability.'" *Id.* (alteration in original) (quoting *McLeod*, 42 Wn.2d at 323). It is true that districts have no duty to prevent unforeseeable harms to their students. *See Kok*, 179 Wn. App. at 19. But *McLeod* explicitly rejected the district's argument that as a matter of law, student-on-student rape was not foreseeable because student criminal conduct is not foreseeable or because the intervening act of another student exonerates the district from its duty. 42 Wn.2d at 321. "The fact that the danger stems from such an intervening act . . . does not itself exonerate a defendant from negligence. If, under the assumed facts, such intervening force is reasonably foreseeable, a finding of negligence may be predicated thereon." *Id.* at 320 (citing *Berglund v. Spokane County*, 4 Wn.2d 309, 103 P.2d 355 (1940)). "This principle has special application in cases, such as the one before us, where the defendant has custody of the plaintiff." *Id.*

We are left then with the district's argument that 14-year-old N.L.'s decision to leave campus with Clark changes this calculation as a matter of law. But "'[f]oreseeability is normally an issue for the jury.'" *Taggart v. State*, 118 Wn.2d 195, 224, 822 P.2d 243 (1992)) (quoting *Christen v. Lee*,

16

113 Wn.2d 479, 492, 780 P.2d 1307 (1989)). We see no reason to depart from that rule here. Students have been skipping class "[s]ince at least the days of Huck Finn and Tom Sawyer." *Hoyem*, 22 Cal. 3d at 520. We cannot say as a matter of law that it is unforeseeable that students will leave campus together.

We affirm the Court of Appeals and hold that the district had a duty to students to use reasonable care to protect them from foreseeable injuries and that whether this injury fell within the scope of that duty is properly a question for the jury.

## 2. PROXIMATE CAUSE

Next, we are asked whether the trial court properly dismissed on proximate cause grounds. Proximate cause has two elements: cause in fact and legal cause. *Hartley v. State*, 103 Wn.2d 768, 777, 698 P.2d 77 (1985) (citing *Harbeson v. Parke-Davis, Inc.*, 98 Wn.2d 460, 475, 656 P.2d 483 (1983)). "Cause in fact refers to the 'but for' consequences of an act—the physical connection between an act and an injury." *Id.* at 778 (citing *King v. City of Seattle*, 84 Wn.2d 239, 249, 525 P.2d 228 (1974)). It is normally a question for the jury. *Id.* Legal cause "is grounded in policy determinations as to how far the consequences of a defendant's acts should extend." *Crow*, 134 Wn.2d at 518. "In deciding whether a defendant's breach of duty is too

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

remote or insubstantial to trigger liability as a matter of legal cause, we evaluate 'mixed considerations of logic, common sense, justice, policy, and precedent.'" *Lowman*, 178 Wn.2d at 169 (internal quotation marks omitted) (quoting *Hartley*, 103 Wn.2d at 779). "[W]here the facts are not in dispute, legal causation is for the court to decide as a matter of law." *Schooley v. Pinch's Deli Mkt., Inc.*, 134 Wn.2d 468, 478, 951 P.2d 749 (1998) (citing *King*, 84 Wn.2d at 250). Both legal cause and duty concern the question of how far the legal consequences of the defendant's negligence should extend. *Id.* "There may, of course, be more than one proximate cause of an injury, and the concurring negligence of a third party does not necessarily break the causal chain from original negligence to final injury." *Smith v. Acme Paving Co.*, 16 Wn. App. 389, 396, 558 P.2d 811 (1976) (citing *State v. Jacobsen*, 74 Wn.2d 36, 442 P.2d 629 (1968)).

The district's summary judgment motion (and the trial court's ruling) did not clearly articulate whether it was based on legal cause, cause in fact, or both. The substance of the district's (and its amici) arguments to this court go to legal cause: whether "'mixed considerations of logic, common sense, justice, policy, and precedent'" should lead us to conclude any negligence on the part of the district did not cause N.L.'s injuries. *Lowman*, 178 Wn.2d at 169 (quoting *Hartley*, 103 Wn.2d at 779). The district

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

suggests that "'the connection between the ultimate result and the act of the defendant is too remote or insubstantial to impose liability.'" Suppl. Br. of Pet'r at 9 (quoting *Tyner v. Dep't of Soc. & Health Servs.*, 141 Wn.2d 68, 82, 1 P.3d 1148 (2000)).

Sex offender registration began in this state with the community protection act of 1990. LAWS OF 1990, ch. 3, § 402. The act was in response to several horrific crimes by known sex offenders and was based on the work of a governor's task force on community protection. Norm Maleng, *The Community Protection Act and the Sexual Violent Predators Statute*, 15 U. PUGET SOUND L. REV. 821, 821, 822 n.2 (1992) (citing GOVERNOR'S TASK FORCE ON CMTY. PROT., DEP'T OF SOC. & HEALTH SERVS., FINAL REPORT II-2 to II-3 (1989)). Initially, the purpose of registration was to assist law enforcement investigation of sexual offenses. *State v. Ward*, 123 Wn.2d 488, 493, 869 P.2d 1062 (1994) (quoting LAWS OF 1990, ch. 3, § 401). The legislature also authorized law enforcement to notify the community of a registered sex offender "'when . . . necessary to protect the public and counteract the danger created by the particular offender.'" *In re Pers. Restraint of Meyer*, 142 Wn.2d 608, 613, 16 P.3d 563 (2001) (quoting LAWS OF 1990, ch. 3, § 117, codified as RCW 4.24.550(1)). In this case, the Pierce County sheriff deemed it necessary to inform Clark's school of his

19

*N.L. v. Bethel School Dist.*, No. 91775-2

status at least in part so that the institution could take appropriate steps to counteract the danger he presented. CP at 20, 75-76.

Given this background and the principles set down in *McLeod*, we cannot say as a matter of law that a district's failure to take any action in response to being notified that Clark was a registered sex offender was not a legal cause of N.L.'s injury. Sexual assault by a registered sex offender is foreseeable, as is the fact that a much younger student can be convinced to leave campus by an older one. *See Bryant v. United States*, 565 F.2d 650, 654 (10th Cir. 1977) (whether school's failure to supervise students who skipped class and were consequently injured in a snowstorm was a proximate cause of their injuries was properly a matter for the jury); *Griego v. Marquez*, 1976-NMCA-022, 89 N.M. 11, 14, 546 P.2d 859 (1976) (whether intervening act in a second motor vehicle accident was the proximate cause of injury sustained is a question of fact for the jury); *see also Kok*, 179 Wn. App. at 19-20.

We also hold that N.L. has produced sufficient evidence of cause-in-fact to overcome summary judgment. If the school's track coach had known that Clark was a registered sex offender who had been convicted of sexually assaulting a younger girl, he or she could have taken steps to keep Clark

20

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

away from the junior high students, or, at the least, not allowed him to act as a mentor to younger students as is alleged here. This is a matter for the jury.

CONCLUSION

School districts have a duty to take reasonable care to protect the children in their custody from foreseeable harm. Whether the district failed to meet its duty and whether any such failure caused N.L.'s injury are properly matters for the jury. We affirm the Court of Appeals and remand for further proceedings consistent with this opinion.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*N.L. v. Bethel School Dist.*, No. 91775-2

González, J.

WE CONCUR:

_____          Stephens, J.

_____          Wiggins, J.

_____          _____

Fairhurst, J.                       Yu, J

22

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*N.L. v. Bethel Sch. Dist.*

No. 91775-2

MADSEN, C.J. (dissenting)—I agree with the majority that schools have a "duty to protect their students from the foreseeable risk of harm the students may inflict on each other." Majority at 8. However, the majority extends this duty to protect students from harms inflicted when students are not in a school's custody. This expands the scope of a school district's duty further than our case law warrants and exposes school districts to liability for events over which they have no control. Because I would hold that school districts do not owe a duty to protect students who are not in their custody from the criminal conduct of other students occurring off school premises, and because I would hold that even if a duty were breached, it was not the proximate cause of N.L.'s harm, I respectfully dissent.

### Duty

The majority holds that "districts have a duty of reasonable care toward the students in their care to protect them from foreseeable dangers that could result from the breach of the district's duty." Majority at 14-15. The holding and iteration of a school district's duty is, on the surface, nothing new. However, by separating the alleged breach from the injury, which here occurred a day later after a series of attenuated events over

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

which the school had no control, and in another student's home, the duty the majority actually establishes is that school districts now owe their students a duty to protect them from harm at all times, regardless of location and custody. The majority reasons that because there is not "a per se rule that a district has a duty to students who are in its custody only when an injury caused by its negligence occurs," majority at 11-12, a district's duty may extend to students' off-campus conduct, even criminal conduct occurring in the home. However, this court's prior case law does place limits on a school district's duty—it is to protect students under its care, custody, and supervision from foreseeable harms.

In *McLeod v. Grant County School District No. 128*, this court held that "'a duty is imposed on the school district to take certain precautions to protect the pupils *in its custody* from dangers reasonably to be anticipated.'" 42 Wn.2d 316, 320, 255 P.2d 360 (1953) (emphasis added) (quoting *Briscoe v. Sch. Dist. No. 123*, 32 Wn.2d 353, 362, 201 P.2d 697 (1949)). The foundation for *McLeod* was *Restatement (Second) of Torts* § 320 (Am. Law Inst. 1979). Under § 320, a school district must prevent one student from harming another if the district "(a) knows or has reason to know that [it] has the *ability to control* the conduct of third persons, and (b) knows or should know of the necessity and *opportunity for exercising such control.*" *McLeod*, 42 Wn.2d at 320 (emphasis added) (quoting RESTATEMENT § 320). The school district could control Clark's conduct only if he were in the district's custody. A school district has neither the ability nor the opportunity to control students in their own homes. As the trial judge pointed out, "[A]

2

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

teacher, an administrator, a coach is not in the role of a CCO, a community corrections

officer." Verbatim Tr. of Proceedings at 18.

Later decisions of this court emphasize that custody is a necessary element of the

special relationship giving rise to a duty. In *Coates v. Tacoma School District No. 10*, we

held that a school district could not be held liable for injuries that occurred off campus,

outside of school hours, and not related to any school-sponsored activity. 55 Wn.2d 392,

396-97, 347 P.2d 1093 (1960). Specifically, we reasoned:

> [T]ranscending these differences [between *Coates* and *McLeod*] is the
> insistence in the *McLeod* case that the injured child was compelled to attend
> school and that she was in the protective custody of the school district
> while on the school premises for that purpose; whereas, here, the time and
> place of the plaintiff's injury would normally suggest that the responsibility
> for adequate supervision . . . was with the parents and the institution known
> as the home.

*Id.* at 397.

In *Carraba v. Anacortes School District No. 103*, we extended the duty to

extracurricular, off-campus, school-sponsored events. 72 Wn.2d 939, 956-57, 435 P.2d

936 (1967). However, we did not eliminate the element of custody from the duty owed to

students. *Id.* at 955 ("The duty owed by a school district to its pupils . . . [is] '[t]o

anticipate reasonably foreseeable dangers and to take precautions protecting the children

*in its custody* from such dangers.'" (emphasis added) (quoting *Tardiff v. Shoreline Sch.*

*Dist.*, 68 Wn.2d 164, 170, 411 P.2d 889 (1966))); *see also Wagenblast v. Odessa Sch.*

*Dist. No. 105-157-166J*, 110 Wn.2d 845, 856, 758 P.2d 968 (1988) ("school district owes

a duty to its students to employ ordinary care and to anticipate reasonably foreseeable

3

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

dangers so as to take precautions for protecting children in its custody from such dangers").

Taken together, these cases stand for the general rule that in order for a school district to owe a duty to its students, the harm must be foreseeable, and it must be in a custodial context. Later Court of Appeals cases bear this out. In *Scott v. Blanchett High School*, plaintiffs brought suit against the high school for injuries arising out of a sexual relationship between their daughter and a teacher at Blanchett High School. 50 Wn. App. 37, 38, 747 P.2d 1124 (1987). The relationship took place entirely off school grounds, outside of school hours, not during any school-sponsored activity, and without the knowledge or consent of the school. *Id.* at 41-42. Plaintiffs argued that the breach— failing to take adequate precautions, failure to monitor teachers, and failure to have a written policy in place forbidding student-teacher relationships—occurred while the student was in school custody and therefore "locate the tort within the scope of [the school's] authority." *Id.* at 45. The court rejected this argument and held the school did not owe the student a duty, finding that "the responsibility for supervision at the time of the alleged activities had shifted away from the school" and, further, that "the proximity between the breach of duty complained of and the alleged injury is so remote that it raises the possibility of finding proximate cause absent as a matter of law." *Id.* The court went on to identify the danger of expanding a school district's liability—which the majority does here—stating that "[b]y [plaintiff]s' logic, a school which failed to monitor student relationships and provide adequate sex education would also be liable for teen

4

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

pregnancies, regardless of the circumstances, because teen pregnancies are 'within a general field of danger which should have been anticipated.'" *Id.* (quoting *McLeod*, 42 Wn.2d at 321).

In *J.N. v. Bellingham School District No. 501*, a first-grade student, alleging he had been sexually assaulted by a fourth-grade student in the school bathroom, brought an action against the school district. 74 Wn. App. 49, 54, 871 P.2d 1106 (1994). Outlining the school district's duty, the court stated that "when a pupil attends a school, he or she is subject to the rules and discipline of the school, and the protective custody of the teachers is substituted for that of the parent." *Id.* at 56-57. There, the injury occurred while the student was in school custody and, given the history of aggressive and disruptive behavior of the assailant, the court concluded that the harm "fell within the general ambit of hazards which should have been anticipated by the District." *Id.* at 60.

Applying these cases, I can conclude only that if a student is a registered sex offender, a school district's duty is to protect its students from being sexually assaulted by the registered sex offender during school or school-sponsored activities. Given Clark's history of sexual assault, had he assaulted N.L. while she was in school custody, the school district would most certainly have owed N.L. a duty to protect her. But a school district's specific duty is to protect the children in its custody from harm; it is not to protect children in their homes or in the home of another student from harm. To hold otherwise would be to expand a school district's liability beyond reason.

5

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 91775-2
Madsen, C.J. dissenting

The majority says that courts across the nation are divided, majority at 13, but most courts have held there is no duty if the injury occurs off campus and not during a school-related event. The majority relies on *Hoyem v. Manhattan Beach City School District*, 22 Cal. 3d 508, 513, 585 P.2d 851 (1978), in which the California Supreme Court held that a school district may be held liable if the breach of an on campus duty proximately caused an off-campus injury, but there a 10-year-old boy left campus during class and was subsequently struck by a motorcycle.[1] The majority also relies on *Eisel v. Board of Education*, 324 Md. 376, 597 A.2d 447, 452-53 (1991), which held a school board could have a duty to prevent an off-campus, non-school-related suicide. In *Eisel*, the student who committed suicide made her intent known to friends, which was then relayed to a school counselor. *Id.* at 449-50. The duty of a school counselor with direct evidence of a student's intent to commit suicide is far different from the duty advocated by the majority in this case. On the other hand, in addition to our own precedent, courts in Louisiana, Florida, New York, Kansas, and Idaho have held a school district does not owe an injured student a duty when that student is off campus.[2] The weight of authority does not support the majority here.

---

[1] Although I would have decided *Hoyem* differently, the facts of *Hoyem* are notably different than the ones here. In *Hoyem*, the plaintiff was 10 years old and should have been in class. Here, the student was 14 and chose not to attend an extracurricular activity. The breach alleged in *Hoyem*, letting a student leave school when he should be in class, is far more feasibly avoided than the one alleged here, which is, in essence, allowing a registered sex offender to meet another student.

[2] *See, e.g., Coates*, 55 Wn.2d at 396-97; *Scott*, 50 Wn. App. at 38; *S.J. v. Lafayette Par. Sch. Bd.*, 41 So. 3d 1119, 1126 (La. 2010) (in finding no liability when a student was sexually attacked off

6

No. 91775-2
Madsen, C.J. dissenting

school grounds, while walking home from school, the court stated that "the school board is not the insurer of the safety of the children, and constant supervision of all students is neither possible nor required"); *Hayes v. Sheraton Operating Corp.*, 156 So. 3d 1193, 1198 (La. App. 2014) (in holding a charter school not liable for the rape of a student at an off-campus party hosted at a hotel by a classmate's mother, the court stated that "it is well established that a school board's duty of reasonable supervision is limited to instances where the student is in its custody or control"); *B.L. v. Caddo Par. Sch. Bd.*, 73 So. 3d 458, 460-61 (La. App. 2011) (holding that even if the school were aware of the attacking student's history of behavioral problems, the school's duty of care ended when the students left the school premises); *Cavalier v. Ward*, 723 So. 2d 480, 484 (La. App. 2011) ("The liability of the school board and its employees for injuries to students exists only when the school board has actual custody of the students entrusted to their care."); *Kazanjian v. Sch. Bd.*, 967 So. 2d 259, 264 (Fla. App. 2007) (holding that a school district was not liable for the death of a student who left school without authorization and was killed in a motor vehicle accident); *Matallana v. Sch. Bd.*, 838 So. 2d 1191, 1192 (Fla. App. 2003) (holding that the school had no duty to supervise at the time of an incident that occurred off school premises and was unrelated to any school activities); *Concepcion v. Archdiocese of Miami*, 693 So. 2d 1103, 1103-04 (Fla. Dist. Ct. App. 1997) (holding that a school owes no "duty of supervision to students during non-school hours when the students are not on the school's premises and not otherwise involved in school related or sponsored activities"); *Pratt v. Robinson*, 349 N.E.2d 849, 852 (N.Y. 1976) ("The duty owed by a school to its students . . . stems from the fact of its physical custody over them . . . . The school's duty is thus coextensive with and concomitant to its physical custody of and control over the child. When that custody ceases because the child has passed out of the orbit of its authority in such a way that the parent is perfectly free to reassume control over the child's protection, the school's custodial duty also ceases."); *Davis v. Marzo*, 55 A.D.3d 1404, 1404-05 (S.C. App. Div. N.Y. 2008) ("It is well established that a student who leaves school grounds is not entitled to protection of the school district, and that is the case herein." (citations omitted) (citing *Chalen v. Glen Cove Sch. Dist.*, 29 A.D.3d 508, 509 (S.C. App. Div. N.Y. 2006); *Youngs v. Bay Shore Union Free Sch. Dist.*, 258 A.D. 580, 580 (S.C. App. Div. N.Y. 1999))); *Palella v. Ulmer*, 518 N.Y.S.2d 91, 93 (N.Y. Sup. Ct. 1987) ("The court has found no precedent for the proposition that a school district is responsible for an injury to a student which occurs off school grounds except where such student was involved in a school sponsored or supervised off-campus activity."); *Glaser ex rel. Glaser v. Emporia Unified Sch. Dist. No. 253*, 21 P.3d 573, 581 (Kan. 2001) (finding no student-school district duty existed when "the injury occurred off school premises and at a time when the student was not on school property or in school custody"); *Honeycutt v. City of Wichita*, 836 P.2d 1128, 1140 (Kan. 1992) ("'[a] school district is under no duty to supervise, or provide for the protection of its pupils, on their way home, unless it has undertaken to provide transportation for them'" (alteration in original) (quoting *Kerwin v. County of San Mateo*, 176 Cal. App. 2d 304, 307, 1 Cal. Rptr 437 (1959))); *Stoddart v. Pocatello Sch. Dist. #25*, 239 P.3d 784, 790-91 (Idaho 2010) (declining to extend a school district's duty to require it "take reasonable steps to prevent a violent criminal act against a student by a fellow student away from school grounds and not in connection with a school-sponsored activity").

7

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 91775-2
Madsen, C.J. dissenting

I also agree with the petitioner that the proximity between the duty breached and the alleged injury is too remote and therefore was not reasonably foreseeable. The breach alleged is that Bethel School District did not have a sex offender policy in place and, if it had, N.L. and Clark would never have met. Had Clark never met N.L., then they would not have texted and planned to leave campus and have lunch and Clark would not have taken N.L. to his home and would not have raped her. This is very similar to the argument rejected by the Court of Appeals in *Scott*. The majority attempts to answer petitioner's argument—that the harm was not foreseeable because N.L.'s injury was the result of Clark's criminal conduct after N.L. skipped track practice—by isolating each element and concluding that each, on its own, is not dispositive.[3] *See* majority at 15-16. Each fact in isolation may not be enough to make the injury "so highly extraordinary or improbable as to be wholly beyond the range of expectability." *McLeod*, 42 Wn.2d at 323. However, taken together, a school district cannot be expected to foresee that merely allowing two students to meet would lead to an injury to a student who left campus, went to the home of another student, and was injured by that student's criminal conduct.

The implications of the majority's decision are far reaching. If N.L. were Clark's classmate, the school could not prevent her from being introduced to Clark by a mutual friend, from exchanging text messages and phone calls with Clark, or from skipping

---

[3] For example, the majority seemingly characterizes *McLeod* to stand for the proposition that because the court rejected the district's argument that student-on-student rape was not foreseeable, then student on student rape is always foreseeable. Majority at 15-16. However, *McLeod* held student-on-student rape is foreseeable if there is an area on campus that, if left unsupervised, would give rise to acts of indecency, such as rape.

8

No. 91775-2
Madsen, C.J. dissenting

practice and going to his house, but could still be held liable for a sexual assault. Taken to its logical conclusion, if a school has notice of a student's violent tendencies, under the majority's view, it could be found liable for an off-campus, non-school-related assault. If a school district is aware of a student's emotional or behavioral disorder,[4] it would be potentially liable for a student's harmful actions off campus, even at a student's own home. The majority's decision will make school districts the insurers of troubled students' off-campus conduct.

The majority's decision also imposes an unworkable burden on school districts in the context of a sex offender. Registered sex offenders have a constitutional right to attend school. WASH. CONST. art. IX, § 1; *Wash. State Office of Superintendent of Pub. Instruction* (OSPI), *School Safety Center, Juvenile Sex Offenders in Schools*, http://www.k12.wa.us/Safetycenter/Offenders/default.aspx [https://perma.cc/D77S-YLKJ] ("Juvenile sex offenders in Washington have a continued right to a public education after their conviction, and many return to public schools after periods of confinement."). Indeed, their attendance is mandatory. RCW 28A.225.010. Registered

---

[4] "Based on criteria from [Diagnostic and Statistical Manual of Mental Disorders] DSM-IV, 15 to 20% of the entire student population is said to have a clinically significant emotional and/or behavioral disorder at any one time." Larry Matsuda, SEATTLE UNIV., *Teaching Students with Severe Emotional and Behavioral Disorder: Best Practices Guide to Intervention* 1 (2005), http://www.k12.wa.us/SpecialEd/Families/pubdocs/bestpractices.pdf [https://perma.cc/FU2J-8A7E]. The definition of an "emotional and behavioral disorder" (EBD) used in the Individuals with Disabilities Education Act (IDEA) is less inclusive, but would account for 2 percent of the student population. *Id.* at 2. "Students included within this 2% are primarily those students who have trouble following directions, are oppositional, and who become aggressive toward others." *Id.*

No. 91775-2
Madsen, C.J. dissenting

sex offender students also have a right to privacy. *O'Hartigan v. Dep't of Pers.*, 118 Wn.2d 111, 117, 821 P.2d 44 (1991) (recognizing "the right to nondisclosure of intimate personal information, or confidentiality" (citing *Whalen v. Roe*, 429 U.S. 589, 599-600, 97 S. Ct. 869, 51 L. Ed. 2d 64 (1977))); *see also* RCW 9A.44.130; RCW 4.24.550.[5] This limits what steps a school district may take in order to meet the expanded duty the majority creates. By expanding the duty to noncustodial situations, the majority essentially forces a school district to choose between protecting itself from liability and infringing on its students' constitutional and statutory rights.

Schools in Washington are required to educate all students, including registered sex offenders and students with criminal records or behavioral issues. To make a school district liable for a student's criminal off-campus conduct based on the student's

---

[5] The OSPI's "Model Policy No. 3144" addresses the privacy rights of registered sex offender students.

**Confidentiality**

The principal and school staff will maintain confidentiality regarding these students, the same as all students in the school. Any written information or records received by a principal as a result of a notification are confidential and may not be further disseminated except as provided in a state or federal law.

. . . .

**Inquiries by the Public**

Inquiries by the public at large (including parents and students), regarding students required to register as a sex or kidnapping offender are to be referred directly to local law enforcement. Law enforcement agencies receive relevant information about the release of sex and kidnapping offenders into communities and decide when information needs to be released to the public.

OSPI, RELEASE OF INFORMATION CONCERNING STUDENT SEXUAL AND KIDNAPPING OFFENDERS 2 (2006), http://www.k12.wa.us/Safetycenter/Offenders/pubdocs/ModelPolicyOffenders.pdf [https://perma.cc/P4M9-8U6E].

10

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

enrollment at school and the district's knowledge of a student's behavioral issues creates an overreaching and unworkable responsibility on school districts statewide. Because the injury did not occur on school property or during the course of any school-related activity, was the result of criminal conduct, and occurred after both N.L. and Clark voluntarily left school together, I would hold that the school district did not owe a duty of care to N.L. as a matter of law.

Proximate Cause

The absence of a duty owed is enough to affirm the trial court; however, I would also hold that proximate cause is absent. Proximate cause is composed of both "cause in fact" and "legal causation." *Hertog v. City of Seattle*, 138 Wn.2d 265, 282-83, 979 P.2d 400 (1999). The majority states that cause in fact "is normally a question for the jury," majority at 17, and that N.L. has produced sufficient evidence of cause in fact to allow a jury to decide. *Id.* at 20. Normally it is a question for the jury, but "if reasonable minds could not differ, these factual questions may be determined as a matter of law." *Hertog*, 138 Wn.2d at 275. "'[C]ause in fact[] exists when the act of the defendant is a necessary antecedent of the consequences for which recovery is sought.'" *Coates*, 55 Wn.2d at 398 (quoting *Eckerson v. Ford's Prairie Sch. Dist. No. 11*, 3 Wn.2d 475, 482, 101 P.2d 345 (1940)). Here, Clark and N.L. were introduced by a mutual friend. The meeting took "just took a couple seconds." Clerk's Papers at 52. The alleged breach is that if Bethel School District had had a better policy in place for Clark, or if more teachers and coaches had known about his status as a sex offender, this meeting would have been prevented.

11

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

But the school did not introduce them; a mutual friend did. This same mutual friend gave Clark's phone number to N.L., and N.L. and Clark subsequently exchanged phone calls and text messages. In these communications, Clark asked N.L. if she wanted to go to lunch with him. They both skipped track practice the next day and left school together. It was at this point that Clark took N.L. to his home and sexually assaulted her. The breach alleged, therefore, is not that the district did not have a policy in place, but rather that the school allowed a registered sex offender to meet another student. Even if the school district had a policy, and even if it implemented a plan that directed Clark to stay away from younger female students, and we had the same facts presented here, it could not have prevented Clark and N.L. being introduced by a mutual friend. The alleged breach—allowing a registered sex offender to meet and interact with classmates—cannot be prevented short of isolating registered sex offenders from their classmates because of their status or notifying students and their parents of its students' sex offender statuses. A school district could not accomplish this without infringing on a student's constitutional rights.

Additionally, even a robust policy could not have prevented the injurious conduct, which was not the fact that N.L. and Clark met; rather, the injury was a rape that occurred at a later time in a private home outside the school's supervision. These are independent intervening acts that interrupted the chain of causation. To say that the exact sequence of the events leading to the harm need not be foreseeable does not change this. I cannot say that but for the school district's alleged negligence, N.L. would not have been assaulted.

12

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 91775-2
Madsen, C.J. dissenting

I would also hold that, as a matter of law, there is no legal causation.[6] "The focus in a legal causation analysis is on 'whether, as a matter of policy, the connection between the ultimate result and the act of the defendant is too remote or insubstantial to impose liability.'" *Tyner v. Dep't of Soc. & Health Servs.*, 141 Wn.2d 68, 82, 1 P.3d 1148 (2000) (quoting *Schooley v. Pinch's Deli Mkt., Inc.*, 134 Wn.2d 468, 478-79, 951 P.2d 749 (1998)). We do so because "a negligent act should have some end to its legal consequences." *Hunsley v. Giard*, 87 Wn.2d 424, 435, 553 P.2d 1096 (1976). Because "analyses of duty and proximate cause often overlap and are always subject to policy considerations," the arguments regarding foreseeability and policy considerations set forth in the duty analysis apply equally here. *Travis v. Bohannon*, 128 Wn. App. 231, 242, 115 P.3d 342 (2005) (citing *Hartley v. State*, 103 Wn.2d 768, 779, 698 P.2d 77 (1985)). Additionally, we do not have a "'direct unbroken sequence'" of events. *Kim v. Budget Rent A Car Sys., Inc.*, 143 Wn.2d 190, 203, 15 P.3d 1283 (2001) (quoting *Hertog*, 138 Wn.2d at 282). This case is most similar to *Scott*, in which "the responsibility for supervision at the time of the alleged activities had *shifted away from the school*." 50 Wn. App. at 45 (emphasis added). To allow causation to run from a school district's alleged on-campus breach of duty—essentially allowing a mutual friend to introduce two students—to an injury that occurred the following day, off-campus, and at a private

---

[6] The majority's legal causation analysis rests on the fact that given the background of the community protection act and the principles set down in *McLeod*, they cannot say as a matter of law that the school district's negligence was not a legal cause of N.L.'s injury. Had the injury occurred while N.L. was in the custody of the school, I would agree.

13

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 91775-2
Madsen, C.J. dissenting

residence, would create open-ended liability and impose an "enormous burden . . . [on] school districts." *Stoddart v. Pocatello Sch. Dist. #25*, 239 P.3d 784, 791 (Idaho 2010).[7] Therefore, I would hold that the injury in this case was too attenuated as a matter of law.

Because a school district does not owe a duty of care to students who are injured by the criminal conduct of other students while not in the custody of the school district, and because the plaintiff has failed to establish proximate cause as a matter of law, I would affirm the trial court. Accordingly, I respectfully dissent.

---

[7] The majority cites to this case for the proposition that "[A] school district may owe a duty to its students, despite the fact that injury occurred off of school grounds and outside of school hours." Majority at 14 (alteration in original) (quoting *Stoddart*, 239 P.3d at 789). While the Idaho Supreme Court did say this, it declined to extend the scope of a school district's general duty "to require that a school district take reasonable steps to prevent a violent criminal act against a student by a fellow student away from school grounds and not in connection with a school-sponsored activity." *Stoddart*, 239 P.3d at 790-91.

14

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 91775-2

Madsen, C.J.  dissenting

_Madsen, C.J._