FILED
COURT OF APPEALS
DIVISION II

2015 APR 28 AM 8: 36

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| N. L.,<br><br>               Appellant,<br><br>   v.<br><br>BETHEL SCHOOL DISTRICT,<br><br>              Defendant | No. 45832-2-II<br><br><br><br>PUBLISHED OPINION |

SUTTON, J. — NL[1] appeals the superior court's summary judgment dismissal of her negligence claim against Bethel School District (BSD). NL sued BSD after she was sexually assaulted by a registered sex offender BSD student, Nicholas Clark, while the two were off school grounds. NL has asked us to determine whether BSD, which knew of Clark's sex offender status, owed a duty of care to protect NL and, if so, whether as a matter of law NL's sexual assault was within the general field of danger that BSD could have or should have reasonably anticipated. We hold that (1) BSD owed a duty of reasonable care to protect NL and monitor Clark, and (2) genuine issues of material fact exist as to whether BSD breached its duty and whether that breach was a proximate cause of NL's injury. We reverse and remand.

---

[1] We use initials in this opinion to protect the confidentiality of the juvenile involved.

## FACTS

### I. CLARK'S INITIAL CONTACT WITH NL

In April 2007, NL, age 14, attended eighth grade at Bethel Junior High School. Clark, age 18, attended the twelfth grade at Bethel High School. Both schools were part of BSD. The track and football fields link the two school campuses together. Clark and NL were members of their respective school's track teams. Both track teams held practices on the same track field at the same time at the end of the school day during track season.

At the end of April, a mutual friend introduced NL to Clark while they were on the track field for team practice. Clark lied to NL about his age, telling her that he was 16 years old. Clark and NL exchanged cell phone numbers and began sending text messages to each other that day.

The day after meeting NL, Clark urged her to skip track practice to go to nearby Burger King for lunch with him. Once in the car, Clark told NL he had forgotten something at home and needed to retrieve it. NL went into the house after Clark invited her inside, and once they were inside his bedroom Clark sexually assaulted NL. Clark returned NL to school so she could catch the school bus. NL told a friend that she had had sex with Clark and that information reached the junior high school who notified the police. A year later, in July 2008, Clark pleaded guilty to second degree assault and to failure to register as a sex offender.

## II. BSD's RECORDS ON CLARK

Clark attended school within BSD from kindergarten through twelfth grade. BSD's records show that it disciplined Clark more than 78 times and suspended him on 19 separate occasions.[2] BSD documented Clark's sexually inappropriate conduct in seventh, eighth, and ninth grades. During Clark's ninth grade year, Clark grabbed a girl in the hallway, kissed her on her mouth and breast area, grabbed her buttocks, and pulled her pelvis into him. Clark was convicted of attempted indecent liberties due to this conduct, and BSD suspended him for the remainder of the school year over this incident. As part of Clark's sentence, he was put on probation for 12 months and required to register as a level one sex offender, which he did.

Following his conviction and registration as a sex offender, Clark continued to engage in disruptive and inappropriate conduct at school. Two months after BSD received notice of Clark's sex offender status, while Clark was still on probation in his tenth grade year, he sexually assaulted a female student on the bus. In the twelfth grade, Clark physically assaulted one student, verbally harassed another student, yelled obscenities in class, went inside the girl's bathroom, assaulted two students on two different occasions, and left class and did not return.

---

[2] BSD's original file on Clark has been destroyed. Because it received a pre-suit Public Records Act request, BSD scanned Clark's entire file and returned it to the High school, which retained the file in accordance with its retention schedule. The file was later shredded in accordance with that retention schedule because the high school was not instructed to preserve the file. NL received the scanned version in April 2012. Some of the documents were not readable. *See* Clerk's Papers (CP) at 457-486.

### III. BSD'S MONITORING OF CLARK

Wanda Riley-Hordyk served as the high school's principal while Clark was a student there. On December 7, 2004, Riley-Hordyk received notice from Pierce County that Clark was a level one registered sex offender. BSD policy required Riley-Hordyk to inform Clark's teachers and other personnel of his sex offender status, but she never did so.[3] Riley-Hordyk did not tell the high school's teachers the names of any registered sex offenders in attendance; she told them only that some students were registered sex offenders "but [she was] not at liberty to [disclose those students'] names." CP at 333. BSD's Assistant Superintendent, Michael Brophy, testified that it is "absolutely best practice" and consistent with written policy for the principal to tell the registered sex offender's teachers, who come into contact with that student regularly, about the student's status. CP at 394.

BSD did not have a specific policy requiring that the athletic coach of a registered student sex offender be informed of the student's status if that sport involved the student sex offender intermingling with younger students. If a coach were a certified teacher, it may have been the responsibility of the principal to disclose the name to the coach as well, but Brophy testified that was not a "solid practice" at the time. CP at 395-96. Clark's track coach, a certified teacher, did not recall Riley-Hordyk informing him of Clark's sex offender status nor of any other student's

---

[3] BSD policy #3143 mandates principals to inform teachers of sex offender registration as follows: "District Notification of Juvenile Offenders: A court will notify the common school in which a student is enrolled if the student has been convicted . . . for any of the following offenses: a sex offense . . . . The principal must inform any teacher of the student and any other personnel who should be aware of the information." CP at 335.

sex offender status. Nor did Riley-Hordyk inform the junior high school track coach that Clark was a registered sex offender.

In 2007, BSD did not have any established policy or procedure for monitoring students who were registered sex offenders. Riley-Hordyk testified that she had an "unwritten" process in place to monitor student sex offenders that included a meeting between the counselor for the student sex offender and the assistant principals who are involved in monitoring students. CP at 319-330. None of the other high school or BSD administrators were aware of or involved in this process, including BSD's Assistant Superintendent Brophy; BSD's Athletic Director and Director of Campus Safety, Dan Heltsley; or the high school's other assistant principals.

Riley-Hordyk did not routinely formulate a safety plan procedure with registered sex offenders, but she met with the sex offender students individually to review the high school's code of conduct and had them affirm by their signature that those students (1) knew that the school was aware of his or her offender status, and (2) understood the code of conduct. BSD did not have a policy that required school administrators to formulate safety plans with sex offender students. Riley-Hordyk did not create a written safety plan for supervising Clark during his probation in tenth grade or after she received notice of Clark's registration as a sex offender.

## IV. PROCEDURE

NL sued BSD, alleging negligence because BSD had a duty to protect her from the dangerous propensities of a fellow student and it breached that duty by failing to monitor Clark. BSD moved for summary judgment and dismissal. In opposition to BSD's motion, Judith Billings, former Washington State Superintendent of Public Instruction, provided unrebutted expert opinion on the standard of care for a school district, its duty to monitor and develop a safety plan for Clark,

5

and inform administrators of his sex offender status to protect its students. Billings opined that "[b]ut for the indifference and inaction of Bethel School District, NL would more probably than not, not have been taken by Nicholas Clark to his home, [sexually assaulted] and suffered the documented, extensive consequence of that event." CP at 303 (capitalization omitted).

The superior court granted BSD's motion, ruling that (1) BSD's duty did not extend to NL's harm because the harm occurred off school grounds, and (2) the harm was not reasonably foreseeable as a matter of law. NL appeals.

## ANALYSIS

We review an order granting summary judgment de novo and perform the same inquiry as the trial court. *Durland v. San Juan County*, 182 Wn.2d 55, 69, 340 P.3d 191 (2014). Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). We view all facts and inferences in the light most favorable to the nonmoving party. *Kok v. Tacoma Sch. Dist. No. 10*, 179 Wn. App. 10, 17, 317 P.3d 481 (2013), *review denied*, 180 Wn.2d 1016 (2014). To prove a negligence claim, a plaintiff must show (1) that the defendant owed a duty to him or her, (2) the defendant breached that duty, (3) injury, and (4) a proximate cause between defendant's breach and plaintiff's injury. *Lowman v. Wilbur*, 178 Wn.2d 165, 169, 309 P.3d 387 (2013).

NL argues that the trial court erroneously granted BSD summary judgment because she presented sufficient evidence that (1) BSD owed a duty of reasonable care to protect her and monitor Clark, and (2) genuine issues of material fact existed as to whether BSD breached its duty to protect her and whether BSD's breach was a proximate cause of her injury. We agree.

## I. DUTY AND BREACH

The existence of a legal duty is a question of law that we review de novo. *N.K. v. Corp. of President Bishop*, 175 Wn. App. 517, 525, 307 P.3d 370 (2013), *review denied*, 179 Wn. 2d. 1005 (2013). Whether a defendant breached its duty is generally a question of fact. *Hertog v. City of Seattle*, 138 Wn.2d 265, 275, 979 P.2d 400 (1999). Admissible expert opinion testimony on an ultimate issue of fact is sufficient to create an issue as to that fact, precluding summary judgment. *J.N. v. Bellingham Sch. Dist.*, 74 Wn. App. 49, 60-61, 871 P.2d 1106 (1994).

When a student is at school, he or she is subject to the rules and discipline of the school, and the protective custody of the teachers is substituted for that of the parent. *J.N.*, 74 Wn. App. at 57. A school district has a duty to exercise reasonable care, as a reasonably prudent person would under the circumstances, to protect students in its custody. *McLeod v. Grant County Sch. Dist.*, 42 Wn.2d 316, 320, 255 P.2d 360 (1953); *Briscoe v. Sch. Dist. 123*, 32 Wn.2d 353, 362, 201 P.2d 697 (1949). Because a school district holds mandatory custody of a child, it has a duty to protect its students from harm by a third party that the district (1) knows or has reason to know that it has the ability to control the third party's conduct, and (2) "'knows or should know of the necessity and opportunity'" to exercise that control. *McLeod*, 42 Wn.2d at 320 (quoting RESTATEMENT OF TORTS § 320 (1934)). In determining whether BSD owed a duty to NL, we look at (1) the relationship between BSD and its students, NL and Clark, and (2) the general nature of the risk.[4] *McLeod*, 42 Wn.2d at 319.

---

[4] A duty to protect another from sexual assault by a third party may arise where the defendant has a special relationship with the tortfeasor that imposes a duty to control the third person's conduct *or* it may arise where the defendant has a special relationship with the other which gives the other a right to protection. RESTATEMENT OF TORTS § 315.

A school district's duty to exercise reasonable care extends only to foreseeable risks of harm. *J.N.*, 74 Wn. App. at 57. A school district's duty "is to anticipate dangers which may reasonably be anticipated, and to then take precautions to protect the pupils in its custody from such dangers." *McLeod*, 42 Wn.2d at 320. The particular sequence of events that led to the plaintiff's injury need not be foreseeable for a defendant school district to owe a duty to its students. *McLeod*, 42 Wn.2d at 322. Foreseeability is a question for the jury unless the circumstances of the injury are "so highly extraordinary or improbable as to be wholly beyond the range of expectability." *McLeod*, 42 Wn.2d at 323. "'If . . . there is room for reasonable difference of opinion as to whether such act was negligent or foreseeable, the question should be left to the jury.'" *McLeod*, 42 Wn.2d at 323 (quoting RESTATEMENT OF TORTS § 453 cmt. a (1934)).

A school district's knowledge of one of its student's dangerousness may give rise to a jury question of foreseeability. Here, BSD insists that its duty does not extend to Clark's sexual assault of NL committed off school grounds and the sexual assault was not within the general field of danger that BSD could have anticipated. We disagree. Our Supreme Court in *McLeod* held that the fact that the harm was caused by an intervening intentional criminal act did not "of itself exonerate a defendant from negligence." *McLeod*, 42 Wn.2d at 320. Rather, it was "a fact to be considered in determining whether such act was reasonably foreseeable." *McLeod*, 42 Wn.2d at 321. "[T]he pertinent inquiry is not whether the actual harm was of a particular kind which was expectable. Rather, the question is whether the actual harm fell within a general field of danger which should have been anticipated." *McLeod*, 42 Wn.2d at 321; *see also Christen v. Lee*, 113 Wn.2d 479, 492, 780 P.2d 1307 (1989).

This case is analogous to *J.N.*, where Division One of this court held that JN, a first grader who was sexually assaulted at recess by a fourth grader, presented a genuine issue of material fact by demonstrating that the school district knew about the fourth grader's dangerousness. *J.N.*, 74 Wn. App. at 60. Based on reports of assaultive and aggressive behavior toward other students, sexual language, and "some kind of trauma" that the fourth grader had experienced, the school knew that the fourth grader had the "propensity to assault." *J.N.*, 74 Wn. App. at 52-53, 60. "[W]here the disturbed, aggressive nature of a child is known to school authorities, proper supervision requires the taking of specific, appropriate procedures for the protection of other children from the potential for harm caused by such behavior." *J.N.*, 74 Wn. App. at 60. Thus, even if the fourth grader's sexual assault was outside the general field of danger, summary judgment was inappropriate because J.N. presented sufficient evidence that the school district had notice of the possibility of the specific harm inflicted. *J.N.*, 74 Wn. App. at 60.

Like the school district in *J.N.*, BSD owed NL a duty of reasonable care to protect her from reasonably foreseeable harm. NL presented evidence that BSD had a lengthy school discipline record on Clark with multiple instances of sexual conduct, including the incident that led to Clark's registration as a sex offender. Clark's sexual and assaultive behavior continued into the eleventh and twelfth grades, leading up to his sexual assault of NL. This evidence suggests that BSD was on notice of the possibility for the specific harm to NL, and BSD could have and should have reasonably anticipated that Clark would reoffend. Thus, it had a duty to reasonably protect NL from Clark's reasonably foreseeable acts.

In contrast, in *Kok*, we held that the school district's duty to exercise reasonable care did not extend to a student who was fatally shot at school by another student because the school district

9

could not have reasonably anticipated the harm that occurred. *Kok*, 179 Wn. App. at 13-14. At the time of the shooting in that case, none of the offending student's teachers or other professionals who had evaluated or treated the offending student had notified the school district that he was at risk of assaulting or killing another student at school. *Kok*, 179 Wn. App. at 20. Neither the offending student's behavior at school nor his medical records indicated "any assaultive behavior or tendencies." *Kok*, 179 Wn. App. at 20.

A school district does not owe a duty as a matter of law to a student when the nexus between the harm and the school district's alleged negligent action is too remote. *Coates v. Tacoma Sch. Dist.*, 55 Wn.2d 392, 396-97, 347 P.2d 1093 (1960); *Scott v. Blanchet High Sch.*, 50 Wn. App. 37, 44-45, 747 P.2d 1124 (1987). In *Coates*, our Supreme Court held that a defendant school district did not owe a duty of reasonable care when a student was involved in an accident on her way to a club initiation that was connected to the school only through an advisor. *Coates*, 55 Wn.2d at 394-95. Similarly, in *Scott*, Division One of this court held that a defendant school district did not owe a duty to a student who engaged in a romantic relationship with a teacher because the alleged sexual activities between the teacher and student did not occur at school, during afterhours counseling, or with the school's knowledge or consent. *Scott*, 50 Wn. App. at 41-42, 45.

This case is more like *J.N.*, where the nexus between the school district's failure to take action in response to its knowledge of potential danger and the plaintiff's specific injury were closely connected and not too remote. *J.N.*, 74 Wn. App. at 60. Unlike the defendant school districts in *Coates*, *Scott* and *Kok*, who did not have any knowledge to reasonably foresee the plaintiff student's harm, BSD had a lengthy discipline record of Clark's sexual behavior. BSD received notice of Clark's sex offender status more than two years before he assaulted NL. Yet

BSD took no action to monitor Clark or prevent further sexual assaults by Clark after receiving that notice with knowledge of Clark's other instances of sexual conduct. Clark's sexual assault of NL was closely related to and of the same character as BSD's knowledge of Clark's sexual conduct at school. NL's harm is not too remote from BSD's inaction to conclude that BSD did not owe NL a duty as a matter of law. We do not need to decide whether the specific sequence of events that resulted in NL's harm was reasonably foreseeable. *McLeod*, 42 Wn.2d at 322. NL presented sufficient evidence to have a jury determine whether Clark's risk to reoffend was within the general field of danger that BSD could have or should have reasonably foreseen. Thus, the question of whether NL's harm was foreseeable is a question for the jury.

Furthermore, viewing the facts in a light most favorable to NL, she also presented evidence of a genuine issue of material fact as to whether BSD breached its duty in the way it monitored Clark. Riley-Hordyk did not formulate a safety plan with Clark after BSD received notice of his sex offender registration status; BSD did not have a policy requiring her to do so. BSD did not have an established policy for monitoring registered sex offender students in 2007, either. Even though BSD policy instructed a principal to inform teachers of sex offender registration, Riley-Hordyk did not do so. The junior high school and high school track teams practiced on the same field that adjoined both schools at the same time of day, but Riley-Hordyk did not inform the junior high of Clark's sex offender status. Riley-Hordyk also failed to inform Clark's track team coach at the high school about Clark's status. NL's expert, Billings, testified on the ultimate issue of fact here that BSD had a responsibility to monitor and develop a safety plan for Clark. Billings' unrebutted expert opinion itself is sufficient to preclude summary judgment. *J.N.*, 74 Wn. App. at 60-61. Thus, the trial court should not have granted BSD's summary judgment motion.

## II. PROXIMATE CAUSE

NL also argues that she presented sufficient evidence to preclude summary judgment that BSD's breach was a proximate cause of her injury. We agree.

A school district is liable only if its breach of a duty was a proximate cause of a plaintiff's injuries. *Travis v. Bohannon*, 128 Wn. App. 231, 240, 115 P.3d 342 (2005). Proximate cause has two elements: (1) Cause in fact, and (2) legal causation. *Lowman*, 178 Wn.2d at 169. Cause in fact or "but for" causation refers to the "physical connection between an act and an injury." *Hartley v. State*, 103 Wn.2d 768, 778, 698 P.2d 77 (1985). Cause in fact is usually a question for the trier of fact. *Hartley*, 103 Wn.2d at 778.

Legal causation is grounded in policy considerations as to how far the consequences of a defendant's action should extend. *Lowman*, 178 Wn.2d at 169. To determine whether a defendant's breach of duty is too remote to hold the defendant liable as a matter of law, we evaluate "'mixed considerations of logic, common sense, justice, policy, and precedent.'" *Lowman*, 178 Wn.2d at 169 (quoting *Hartley*, 103 Wn.2d at 779). An injury may have more than one proximate cause and a jury is to determine whether a third party's act is a superseding or a concurring cause. *Travis*, 128 Wn. App. at 242. The intervening act of another person may be an *additional* cause of the plaintiff's injury and does not necessarily relieve the defendant of liability if the harm was foreseeable from the defendant's original breach. *Travis*, 128 Wn. App. at 242. The existence of legal causation is a question of law. *Taylor v. Bell*, ___ Wn. App. ___, 340 P.3d 951, 960 (2014).

Taken in a light most favorable to NL, NL presented sufficient evidence to create a genuine issue of material fact as to whether BSD's breach was a proximate cause of injury to her. As to

12

cause in fact, NL presented evidence that BSD had not adopted any policies to create safety plans or to specifically monitor the activities of registered sex offender students in its schools. Contrary to BSD's policy, Riley-Hordyk failed to inform Clark's teachers of Clark's status. NL also presented Billings' expert opinion that BSD's failure to adopt policies to monitor and supervise sex offenders attending their schools was a proximate cause of NL's injuries.[5] As to legal causation, we cannot say that the harm to NL was "'so highly extraordinary or improbable'" that no reasonable person could be expected to anticipate it. *Seeberger v. Burlington N. R.R.*, 138 Wn.2d 815, 823, 982 P.2d 1149 (1999) (quoting *McLeod*, 42 Wn.2d at 323.)

We hold that (1) BSD owed a duty of reasonable care to protect NL and monitor Clark, and (2) genuine issues of material fact exist as to whether BSD breached its duty and whether that breach was a proximate cause of NL's injury. We reverse and remand.

SUTTON, J.

We concur:

WORSWICK, J.

MELNICK, J.

---

[5] "But for the indifference and inaction of [BSD], [NL] would more probably than not, not have been taken by Nicholas Clark to his home, raped and suffered the documented, extensive consequence of that event." CP at 303 (capitalization omitted).