**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

**FILED**
**FEBRUARY 14, 2023**
In the Office of the Clerk of Court
WA State Court of Appeals Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| M.G., by and with his Guardian ad Litem. Priscilla G. | ) ) ) | No. 38165-0-III |
| Appellants, | ) ) ) | |
| v. | ) ) | |
| YAKIMA SCHOOL DISTRICT NO. 7, a municipal corporation, | ) ) ) | ORDER GRANTING MOTION TO PUBLISH OPINION |
| Respondent. | ) ) | |

THE COURT has considered the appellant's motion to publish the court's opinion of December 6, 2022, and the record and file herein, and is of the opinion the motion to publish should be granted. Therefore,

IT IS ORDERED, the motion to publish is granted. The opinion filed by the court on December 6, 2022, shall be modified on page 1 to designate it is a published opinion and on page 27 by deletion of the following language:

> The majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

PANEL: Judges Fearing, Lawrence-Berrey, Staab

FOR THE COURT:

_____
Siddoway, C.J.
LAUREL H. SIDDOWAY
Chief Judge

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| M.G., by and with his Guardian ad Litem. Priscilla G. | ) ) ) | No. 38165-0-III |
| Appellants, | ) ) ) | |
| v. | ) ) | UNPUBLISHED OPINION |
| YAKIMA SCHOOL DISTRICT NO. 7, a municipal corporation, | ) ) ) ) | |
| Respondent. | ) | |

FEARING, J. — M.G. sues the Yakima School District for violating his constitutional and statutory rights to attend high school absent an evidentiary administrative hearing before expelling a student. We conclude that the school district, with its unending suspension of M.G. from school, effectively expelled him in violation of M.G.'s statutory procedural rights. Therefore, we reverse the superior court's summary dismissal of M.G.'s suit.

No. 38165-0-III
*M.G. v. Yakima School District No. 7*


FACTS

M.G., born in 2005, commenced attending schools within the Yakima School District in 2012. From 2017-19, he attended Franklin Middle School, where his disruptive behavior resulted in disciplinary actions. In October 2017, the school district required M.G. to enter a "gang contract" due to his unremitting refusal to wear blue during gym class. Members of the Norteño gang wear red and shun blue, the color of Sureños. The school district gang contract prohibits a student from engaging in gang activity and lists indicators of such activity, including the wearing of distinctive colors and clothing, executing unique hand signs, adorning distinctive haircuts, and maintaining body markings with idiosyncratic meanings. Franklin Middle School suspended M.G. several times for violating the gang contract.

In the fall of 2019, M.G. enrolled at Yakima School District's Eisenhower High School. M.G. then sported a Mongolian haircut popular among Norteños. During lunch on September 5, M.G. and another student created disorder with a verbal altercation. M.G., to his credit, retreated at least twice from the other student who sought a physical fight. High school officials warned M.G. of consequences if altercations continued. The school district later learned the opposing student was the brother of a girl who M.G. had allegedly threatened with a gun the previous year. The girl had considered attending online school because of her fear of M.G.

2

No. 38165-0-III
*M.G. v. Yakima School District No. 7*



Mongolian haircut

Later on September 5, 2019, M.G. walked into the Eisenhower High School building, unzipped his sweatshirt, and revealed a red shirt underneath. He then, in violation of his gang contract, met with two individuals also under a gang contract.

On September 5, 2019, Eisenhower High School expelled M.G. on an emergency basis because of the lunchtime clash, the exposure of red clothing, and the rendezvous with other gang members. A written notice of expulsion declared an expulsion for ten days beginning September 5 and ending September 18, 2019.

Under a Washington regulation, an emergency expulsion cannot exceed ten consecutive school days and must either end or be converted into another form of discipline within ten days from the start of the emergency expulsion. WAC 392-400-510(3). On September 17, 2019, the Yakima School District converted M.G.'s emergency expulsion into a long-term suspension pursuant to WAC 392-400-510(3). A

3

No. 38165-0-III
*M.G. v. Yakima School District No. 7*

written notice only added two additional days to the initial ten-day emergency

suspension, such that the new suspension ending date was September 20.

On September 18, 2019, M.G. appealed his long-term suspension. The Yakima

School District convened an hour-long hearing on September 20 with M.G., his mother, a

hearing officer, and the principal and assistant principal of Eisenhower High School

attending. The hearing officer affirmed M.G.'s long-term suspension and updated the

duration section of the written notice to read that M.G. was suspended for twelve days

with a return date of September 23, 2019. The school district sent the new notice, based

on the hearing officer's ruling, to M.G.'s home via certified mail on September 24. M.G.

did not appeal this decision, as his suspension ended before he received the written

decision.

The hearing officer's decision included the following terse findings of fact:

> 1. On 9/5/19 [M.G.] has an incident during lunch with another student. Not [M.G.]'s fault. He was sent back to class.
> 2. [M.G.] is on a gang contract from Franklin Middle School.
> 3. After school on 9/5/19 [M.G.] was seen on camera unzipping his coat where he was wearing a red shirt under his coat.
> 4. He was emergency expelled. Admin spoke to other students involved in the lunch incident.
> 5. Incident was with girl's brother who claims [M.G.] had been making comments about his sister since last year while at Franklin. Continued into this school year.
> 6. Student was cooperative during the hearing.
> 7. Student was not aware that the gang contract followed him to high school.
> 8. The students he has surrounded himself with is not a good situation for [M.G.]

4

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 38165-0-III
*M.G. v. Yakima School District No. 7*

>9. Educational services were offered as printed on the emergency expulsion written notice as well as the expulsion written notice.
>10. Emergency expulsion and expulsion written notice forms were both sent by certified mail to the home.

Clerk's Papers (CP) at 23. The written decision's "Other information" section read:

>1. Parent believes school treated her son unfairly.
>. . . .
>3. [M.G.] believes he deserves a second chance.
>. . . [I]ncident at Franklin MS [middle school] was reported to [Yakima Police Department] because a gun may have been involved.
>5. Eisenhower admin[istration] is requesting a move to a different school.

CP at 23.

Despite the suspension ending on September 23, 2019, Yakima School District executive director of student life Amanda Jewell, on September 22, sent a letter to M.G.'s mother informing her that M.G. may not return to Eisenhower High School. The letter mentioned that the Yakima School District School Transfer Committee met on September 19 to consider M.G.'s request to remain at Eisenhower and thereafter decided:

>Due to the serious nature of the threatening behavior towards another student at Eisenhower High School, the Placement Committee is upholding the determination to have [M.G.] attend a school other than Eisenhower.

CP at 21. The September 22 letter cited Yakima School District Policy 3131, which established a right to determine enrollment options to preserve the educational interest of all students. Under the policy, the school district, when making placement decisions, may consider "student disciplinary or safety circumstances." CP at 21 (italics omitted).

5

No. 38165-0-III
*M.G. v. Yakima School District No. 7*

The September 22 missive omitted any mention of appealing the transfer committee's decision or any school to which the school district might transfer M.G.

We lack information as to what transpired between September 23, the date set by the hearing officer's ruling, for the return of M.G. to Eisenhower High School, and October 24, 2019. On October 24, M.G. enrolled in two courses, Introduction to Art and Physical Science, through Yakima Online. He later added Music Appreciation. When attending Eisenhower High School, M.G. had taken core academic classes. Yakima Online is a state-approved educational program wherein students enroll in online courses and either study at a computer lab or at home.

M.G. performed poorly scholastically through Yakima Online. M.G. lacked access to a computer or Internet at his home and took an hour-long bus ride to reach the school district's computer lab. Yakima Online generally requires a sixth-grade academic level to participate; whereas, M.G. performed at or below a fourth-grade level.

On January 16, 2020, during a meeting with Amanda Jewell, Yakima School District executive director of student services, M.G. petitioned for enrollment in the school district's Davis High School and, if not Davis, in Stanton Academy. On January 17, M.G.'s counsel sent a letter to Amanda Jewell that explained M.G. requested to transfer from Eisenhower High School because of being the target of aggression and unsubstantiated allegations. Counsel's letter acknowledged that M.G.'s older brother maintained gang affiliations, but asserted that M.G. did not participate in gang activity.

6

No. 38165-0-III
*M.G. v. Yakima School District No. 7*

The letter added that, in 2019, a young woman wrongly accused M.G. of gang activity in order to retaliate against M.G.'s brother. Counsel attacked the gang policy as overly broad. The letter suggested that the only impediment to M.G.'s reenrollment was his hairstyle. M.G. refused to reconsider his hairstyle because it expressed his identity. The letter complained about excluding M.G. from school on the basis of his hair. Counsel thanked Jewell for offering to advocate for M.G.'s reenrollment at Davis High School or Stanton Academy for spring semester.

On January 17, 2020, M.G. gave a false name to security personnel in order to enter Davis High School. Around the same time, M.G. entered Stanton Academy during school hours and flashed gang signs. Inside Stanton Academy he a wore red belt inscribed with the number 14. Norteños identify with the number 14, because "n" is the fourteenth number in the alphabet. We do not know why M.G. entered the respective secondary schools.

On February 7, 2020, the Yakima School District denied M.G.'s request to transfer to Davis High School or Stanton Academy. Amanda Jewell wrote in a letter to M.G.'s mother:

> This letter serves as a formal notification that the request to transfer [M.G.] to Davis High School or to Stanton has been denied at this time. The reason for denial is based on his refusal to comply with the request to alter his current style of hair that is associated with gang membership paired with the incidents of the week of January 17th 2020 at Davis High School where [M.G.] gave a false name to Davis Security and at Stanton

7

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 38165-0-III
*M.G. v. Yakima School District No. 7*

Academy where he was seen flashing gang signs. Each incident occurred during school hours.

. . . .

I am in agreement his current online placement has not been meeting his educational needs. His current Principal, Lois Menard will be working with him directly to find a more appropriate platform and curriculum.

I am not able to process any further request without Yakima School District's Executive Director of Safety and Security. . . . You can [c]all her directly . . . if you have any questions, concerns, or would like to schedule an appointment.

CP at 33.

On February 14, 2020, M.G. appealed the denial of his school transfer request in a letter to the president of the Yakima School District's board, Raymond Navarro. The letter avowed that M.G. discussed his enrollment at Davis High School or Stanton Academy with Amanda Jewell, who promised to meet with the respective principals of the secondary schools before school recommenced in January 2020. Jewell did not contact M.G. again until after the school district denied him enrollment at both schools. In the February 14 letter, M.G. requested reconsideration or an explanation for denial of his transfer. The letter declared:

The District has accused [M.G.] of wearing the color red, of flashing gang hand signals (an allegation that [M.G.] denies), and of wearing his hair in a cut that aligns with gang hair style. [These allegations, even if true], . . . are an insufficient basis to merit school exclusion.

CP at 80. The letter asserted that the school district failed to offer M.G. educational opportunities or make accommodations to fit his learning needs.

8

No. 38165-0-III
*M.G. v. Yakima School District No. 7*

On February 25, 2020, a Yakima School District ad hoc committee convened to address M.G.'s school transfer request. M.G.'s mother attended and challenged the proof of the school district's allegations, including whether M.G. had been at Stanton Academy in January.

On March 3, 2020, the Yakima School District sent a letter to M.G. that denied his appeal of the transfer request. The letter expressed the school district's encouragement about M.G.'s professed commitment to his education. CP 36. The letter read, in part:

> Regarding the request for a transfer to Davis or Stanton, the following information/evidence was provided to support the decision to not allow enrollment at Davis or Stanton at this time:
> 1. Hairstyle. The Student Resource Officer (SRO) . . . stated that the hairstyle [M.G.] is wearing is known as a Mongolian cut. Historically, Mongolian soldiers wore this hairstyle to signify readiness to fight. Gangs are now using this hairstyle for the same purpose, to signify allegiance to a gang and to signify a readiness to fight rival gang members.
> 2. Other gang affiliated wear. The SRO stated that during an incident in the spring of 2019, [M.G.] was found with a red belt inscribed with the number 14 and a red bandana which are also indicative of gang affiliation. The number 14 coincides with the letter "N" signifying an affiliation with the Norteno [sic] gang.
> 3. [M.G.]'s presence at Stanton and at Davis was not authorized. . . . during the school day the district['s] expectations are that our campuses are open to the students who attend their specific school.
> 4. Safety concerns. . . . Having gang members at a large school like Davis signifying a willingness to engage and fight rival gang members presents a significant safety concern.
> This information presented . . . was not refuted. The evidence demonstrates that [M.G.] had and continues to demonstrate gang affiliation. Instead of refuting this evidence, there was [an] argument made on behalf of the student that what constitutes a gang haircut is vague and that the student was not aware that his hairstyle was gang-affiliated and was, therefore, being denied due process. The evidence shows that [M.G] was

9

No. 38165-0-III
*M.G. v. Yakima School District No. 7*

> specifically advised that his haircut was considered gang affiliated and that
> it was not acceptable, but he chose to keep it in defiance of such notice.
> The student further argued that his hairstyle is protected expression and,
> that it serves as a means by which he expresses his individuality. The
> ability to express oneself, however, must be weighed against the safety
> concerns for the student, other students, staff, and any others that may be
> present in the school building. Here, safety is a paramount concern and
> outweighs the right to expression under these circumstances.

CP at 36-37. The March 3 letter enclosed a copy of the operational policy on student enrollment and transfers, and highlighted the next steps in the process if M.G. disagreed with the Yakima School District's decision.

On March 13, 2020, M.G.'s Team Child advocate notified Amanda Jewell that M.G. would appeal the ad hoc decision denying his transfer to Davis High School or Stanton Academy from Yakima Online. The same day, M.G.'s advocate wrote a letter to the Eisenhower High School principal demanding his return under WAC 392-400-430(8)(b). M.G. argued that no exceptions to the rule applied and the high school must permit him to return to his regular educational setting because his suspension had concluded. CP 105. He requested a meeting to discuss the school district assisting in his transition to Eisenhower High School.

On March 26, 2020, the Yakima School District's legal counsel responded by e-mail to M.G.'s request to return to Eisenhower High School. Counsel insisted that M.G. could not return to the high school because he

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 38165-0-III
*M.G. v. Yakima School District No. 7*

        continues to exhibit the behavior that resulted in his removal from
Eisenhower; i.e[.,] the gang associated hairstyle among other things. That
suspension was in accordance with RCW 28A.600.455.

CP at 146. The letter added that M.G. had enrolled and began attending Yakima Online.

Accordingly, M.G. was not enrolled at Eisenhower High School. Counsel's letter also

alleged M.G. had subjected an Eisenhower student to harassment and intimidation. The

e-mail concluded:

        That student's safety, as well as the safety of others, staff, and
[M.G.]'s own safety, are significant concerns when considering whether
[he] should return.

CP at 146.

        In April 2020 and due to the COVID-19 pandemic, the Yakima School District

began offering students laptops and hotspots for remote learning. The school district

extended this offer to M.G. *See* CP 109-15. We assume that, beginning in spring 2020,

M.G. attended Eisenhower High School remotely as if he was under no suspension. In

December 2020, however, M.G. quit attending Eisenhower and ceased contact with the

school district. In December, M.G.'s family suffered eviction from its apartment and the

family lacked full-time housing until February 2021.

        Beginning in June 2021, M.G. resided in Grandview with family members. That

autumn he enrolled at Grandview High School. In November 2021, M.G. returned to

Yakima when his mother found an affordable apartment.

11

No. 38165-0-III
*M.G. v. Yakima School District No. 7*

In December 2021, M.G. called Eisenhower High School Principal Lois Menard and stated he had resided outside the school district but now desired to return to Yakima Online or Open Doors. Menard told M.G. he needed to re-enroll.

M.G. enrolled in the Yakima School District's Open Doors program, which helps students obtain a GED. M.G. regularly attended the program. According to Lois Menard, M.G. expressed a desire to continue the Open Doors program and has not mentioned any desire to return to the general student population or Eisenhower High School. M.G. was prohibited from attending Eisenhower online by March 2021 because the school had resumed a hybrid schedule, and he could not access his online classes.

In a declaration, M.G. declares:

> I still want to go to school and graduate, so I came back to Yakima Online. It is my understanding that it's [Yakima Online is] the only option the school district will give me. . . . I signed up for the GED program because the staff told me that was my best option. They told me it would take a long time to get my diploma and I was too far behind on credits. I don't think I can pass classes to get a diploma in online school.

Appellant's Resp. to Mot. to Dismiss, App. 1, at 15 (May 12, 2022) (Decl. of M.G.).

M.G. struggled with online learning and preferred to work from the computer lab. He encountered difficulty understanding the assignments by himself and experienced trouble reaching his teachers.

M.G. further declares:

> 18. I have been trying really hard to make online work, but it hasn't. I don't feel like I've been learning since I've been online. Ideally, I'd want

12

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 38165-0-III
*M.G. v. Yakima School District No. 7*

> to go back to Eisenhower and get my diploma. I know I'm capable. I think I would have done well if I could have stayed. I would have wanted to get into sports, like football.
>
> . . . .
>
> 20. I would like the school district to help me get an actual education to meet my goals. I need to know how to read well, do basic math, and learn practical skills to be successful. I think it would be helpful to have compensatory education like a one-to-one teacher.

Appellant's Resp. to Mot. to Dismiss, App. 1, at 17 (May 12, 2022) (Decl. of M.G.)

PROCEDURE

On April 24, 2020, M.G. filed in superior court a notice of appeal, pursuant to RCW 28A.645.010, of the March 26 Yakima School District decision enveloped in the school district's letter from the school district's counsel. He alleged the school district violated Washington law by denying his return to Eisenhower High School, deprived him of his constitutional right to an education, and violated due process by excluding him from in-person schooling because of his hairstyle. Among other relief, M.G. sought a declaratory ruling finding that the school district's gang related behavior policy being used to preclude M.G.'s returning to school on the basis of hairstyle is unconstitutionally vague and void. M.G. asked that the superior court order the school district to return him to Eisenhower High School and to afford him compensatory education services for the 106 days of education from which the district illegally excluded him.

On July 31, 2020, M.G. moved for summary judgment. He argued that the school district denied him due process by failing to provide adequate notice of the alleged school

13

No. 38165-0-III
*M.G. v. Yakima School District No. 7*

district rule violation that formed the basis of his expulsion. He also contended that the law demanded that the school district allow him to return to his regular educational setting following his suspension. He highlighted that the legislature, in 2016, added this stringent requirement with the express intent to reduce the amount of time minority students were excluded from the classroom.

Six months later and on February 8, 2021, the Yakima School District filed its response in opposition to M.G.'s motion for summary judgment and a cross-motion for dismissal with prejudice. The school district denied that its policy was vague, argued that the district warned M.G. about the nature of his hairstyle and its relationship to gangs, and the district afforded M.G. due process when challenging the district's decision. The Yakima School District asserted that M.G.'s presence in school presented safety concerns for students, teachers, and M.G. due to his gang affiliation. The school district submitted declarations from school officials that included new allegations against M.G. We suspect that the pandemic delayed the school district's response to M.G.'s summary judgment motion and any hearing on the motion.

M.G. moved to strike the Yakima School District's declarations as evidence never presented during the school district's internal appeal proceedings. M.G. argued that the superior court must entertain his appeal of the March 26 decision de novo and the court may not consider evidence outside the administrative record.

14

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 38165-0-III
*M.G. v. Yakima School District No. 7*

On March 16, 2021, the superior court entertained M.G.'s summary judgment

motion. At the commencement of the hearing, the parties discussed M.G.'s motion to

strike allegations forwarded by the Yakima School District not found in the

administrative record. The school district admitted that some of the assertions in its

officials' declarations related to events that occurred after the district's decision.

Nevertheless, all assertions addressed the school district's ongoing safety concerns. The

school district argued that, assuming the superior court refused to entertain new evidence,

the court should remand to the district to consider the new assertions.

The superior court observed that M.G. appealed the Yakima School District's

March 26, 2020 decision denying his request to return to Eisenhower High School. Thus,

the court ruled that it would limit its review to the transcript of a March 26 hearing.

March 26 is the date on which Yakima School District's counsel responded by e-mail to

M.G.'s request to return to Eisenhower High School. The superior court then commented

that it lacked the transcript from the hearing. The school district responded: "there was

no hearing underlying [the] Decision." Report of Proceedings (RP) at 6.

During the March 16, 2021 hearing, the superior court asked whether

RCW 28A.600.455 applied to the re-entry process following a suspension. The Yakima

School District argued against application of the statute:

> Their [M.G.'s] argument is basically that there can never be an
> indefinite suspension because the WAC says that . . . there should be some

15

No. 38165-0-III
*M.G. v. Yakima School District No. 7*

reasonable attempt to replace the student into their, their previous regular educational setting.

. . . [T]hese WACs are promulgated in response to [RCW 28A.600.460] regarding suspensions . . . they should be of limited time but it also acknowledges there could be situations where suspensions could go on due to circumstances. . . . [N]othing in the Section is intended to limit the authority of a school under existing Law and Rule to expel or suspend a student for misconduct or criminal behavior.

So, there's no limitation really. What they are [M.G. is] trying to do is enforce the school to take a student back and then place other students in potential [peril].

RP at 26-27.

The superior court ruled from the bench:

There was a determination made in the fall of 2019 that [M.G.], was . . . somehow gang affiliated. . . . [O]ne of the reasons for his original suspension was that he came to school wearing a red shirt and he knew . . . that you couldn't wear red and the haircut was just part of the reason that he was suspended and we've already talked about this gang contract thing that he signed.

So the question is what happened after that. Because the concern is that this turned into an almost indefinite suspension without the school making an effort to get him back into, into regular high school.

RP at 38.

The superior court rejected M.G.'s due process challenge to the Yakima School District's demand that he restyle his hair since the district had told M.G. to eliminate the hairstyle because of its gang symbolism. Despite notice, M.G. refused to alter his hairdo. The superior court extrapolated that this stubbornness showed M.G.'s unwillingness to refute his gang connections. The court mentioned M.G.'s giving a false name to security, flashing gang signs at Davis High School, and wearing a gang-related belt. M.G.

16

No. 38165-0-III
*M.G. v. Yakima School District No. 7*

presented no evidence that he did not violate his gang contract or school district's safety

concerns.

The superior court, when affirming the Yakima School District's actions,

reasoned:

> I understand the argument that the re-entry process is different from the suspension process. But . . . if a school has evidence that would convince them [sic] to immediately suspend somebody, there's no point in allowing them [sic] to re-enter and then turning right around two minutes later and say, okay now you're suspended because of the, the gang affiliated symbols and so on. So, it seems to me it makes more sense to say that the school doesn't have to allow somebody to re-enter if they haven't changed the behavior that caused them to get suspended in the first place.

RP at 41. The superior court highlighted M.G.'s lack of effort in Yakima Online and his

rejection of the school district's offer of a tutor.

On March 25, 2021, the superior court entered an order denying M.G.'s motion for

summary judgment and dismissing the case. The court also entered an order

memorializing its oral ruling on the motion to strike the declarations that added facts

beyond that contained in the administrative record.

M.G. appealed. M.G. filed his opening brief in November 2021. In January 2022,

the Yakima School District moved to strike a portion of the brief that included argument

and data on disproportionate suspensions of students of color. M.G. resisted the motion

to strike because he had not asserted a new issue on appeal. M.G. claimed that he had

consistently raised the inequity in the school district's disciplines of students.

17

No. 38165-0-III
*M.G. v. Yakima School District No. 7*

One week later, M.G. moved to strike the Yakima School District's brief, appendices to the brief, new declarations, and exhibits filed with its brief. M.G. also filed a motion to redact all references relying on those documents. *See* Appellant's Mot. to Strike New Evid.; For Expedited Review or Add'l Time for Reply; and Sanctions (January 18, 2022). He argued that the declarations and exhibits alleged occurrences happening after his discipline and highlighted that the superior court already struck declarations that added information beyond the facts in the administrative record. The school district had not cross-appealed the superior court's order to strike declarations.

This court's commissioner referred the Yakima School District's motion to strike to this panel of judges. The commissioner granted M.G.'s motion to strike the school district's motion, declarations in support, and appendices, but indicated the school district could submit those materials in support of its motion to dismiss the appeal in a separate filing pursuant to RAP 17. *See* Comm'r's Ruling at 2-3, 4-7 (March 31, 2022).

On May 2, 2022, the Yakima School District filed a motion to dismiss based on mootness, failure to exhaust administrative remedies, and ripeness pursuant to RAP 17.4(d). The school district submitted the previously challenged and stricken declarations in support of dismissal. On May 18, 2022, our court commissioner determined that the Yakima School District's motion to dismiss should be considered by the panel at the same time it considers the merits of the appeal.

18

No. 38165-0-III
*M.G. v. Yakima School District No. 7*

LAW AND ANALYSIS

Mootness

The Yakima School District requests that we dismiss M.G.'s appeal as moot. We disagree. The school district submitted declarations in support of its motion to dismiss. This court generally refuses to consider new evidence. RAP 9.11; 2A ELIZABETH A. TURNER, WASHINGTON PRACTICE: RULES PRACTICE RAP 9.11 authors' cmts. (9th ed. 2022). We do, however, permit a party to introduce evidence outside of the trial court record to support a motion in this court. 2A ELIZABETH A. TURNER, WASHINGTON PRACTICE: RULES PRACTICE RAP 9.11 authors' cmts. (9th ed. 2022). We summarized the additional evidence submitted by the Yakima School District in our factual section of this opinion. We do not consider the evidence when we reach the merits of the appeal.

Under RAP 18.9(c), we may dismiss an appeal if it is moot. A case is moot when it involves only abstract propositions or questions, the substantial questions in the trial court no longer exist, or a court can no longer provide effective relief. *Spokane Research & Defense Fund v. City of Spokane*, 155 Wn.2d 89, 99, 117 P.3d 1117 (2005); *Josephinium Associates. v. Kahli*, 111 Wn. App. 617, 622, 45 P.3d 627 (2002).

The Yakima School District first contends that M.G.'s appeal is moot because he "left" the school district territory for an extended period of time. It argues that M.G. was no longer "enrolled" under WAC 392-121-108(1), which provides:

19

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 38165-0-III
*M.G. v. Yakima School District No. 7*

> a student whose consecutive days of absence from school exceed twenty school days . . . shall not be counted as an enrolled student until attendance is resumed.

M.G. concedes he did not reside within the school district from June through November 2021. According to the school district, M.G. could not have been an enrolled student during that period.

M.G. requested to return to Eisenhower High School in March 2020. M.G. appeals the school district's decision to deny that request. He remained "enrolled" in the school district under the regulatory definition. M.G. did not voluntarily withdraw from Eisenhower High School and permanently re-enroll in a different school. Although his lack of housing required a stay in another school district, he returned to the Yakima School District and sought to re-enroll at Eisenhower High School. Thus, his request for equitable relief—that the court order Eisenhower to re-enroll him—is not moot. Finally, M.G. seeks compensatory educational services for the days of exclusion from his regular educational setting.

## Exhaustion of Remedies

The Yakima School District next contends that M.G. failed to exhaust his administrative remedies. Accordingly, the school district asks this court to dismiss M.G.'s compensatory education claim as not ripe for review. We again disagree.

20

No. 38165-0-III
*M.G. v. Yakima School District No. 7*

The Yakima School District implies that, because M.G. seeks compensatory education and those claims are only available in the context of special education, he was required to exhaust administrative remedies. We again disagree.

Compensatory education refers to an award of services to compensate for a past deficient program. *Draper v. Atlanta Independent School System*, 518 F.3d 1275, 1280 (11th Cir. 2008); Kevin Golembiewski, *Compensatory Education Is Available to English Language Learners Under the EEOA*, 9 ALA. C.R. & C.L. L. REV. 57, 62 (2018). Compensatory education serves as an equitable remedy to secure educational opportunities denied the student. *R.P. ex rel. C.P. v. Prescott Unified School District*, 631 F.3d 1117, 1125 (9th Cir. 2011).

The remedy of compensatory education often arises in the context of special education litigation. *Parents of Student W. v. Puyallup School District, No. 3*, 31 F.3d 1489, 1497 (9th Cir. 1994). Nevertheless, courts grant the remedy in other contexts such as enforcing school desegregation decrees and the denial of enrollment in a gifted program. *Milliken v. Bradley*, 433 U.S. 267, 284-85, 97 S. Ct. 2749, 53 L. Ed. 2d 745 (1977); M*cFadden v. Board. of Education for Illinois School District U-46*, 984 F. Supp. 2d 882, 902-03 (N.D. Ill. 2013).

M.G. requests compensatory education to remedy the Yakima School District's purported denial of his educational opportunities due to a suspension. He seeks to earn his high school diploma or GED and asserts that he needs assistance to read competently

21

No. 38165-0-III
*M.G. v. Yakima School District No. 7*

and perform basic math. He suggests that the school district should provide him with a one-to-one teacher given his difficulties with online, remote learning. M.G. does not seek any remedy under any disabilities act.

Return Following Suspension

We finally arrive at the heart of the appeal. M.G. contends that the Yakima School District violated state law when prohibiting him from returning to school following his suspension. The school district responds that it may prevent students from returning to school based on safety concerns. Based on Washington statutes and education regulations, we agree with M.G.

The parties advocate differing positions on the applicable standard of review. M.G. requests de novo review. The school district contends this court must limit its review to assessing whether the district's decision was arbitrary, capricious, or contrary to law.

This court reviews an appeal of a nonjudicial decision by an administrative agency in accordance with the separation of powers doctrine. *Porter v. Seattle School District No. 1*, 160 Wn. App. 872, 874, 248 P.3d 1111 (2011). We typically decide whether the agency acted arbitrarily, capriciously, or contrary to law.

M.G. does not appeal a ruling issued by an administrative agency. He did not appeal the hearing officer's decision upholding his initial twelve-day suspension. Instead, he challenges Yakima School District's decision to exclude him indefinitely

No. 38165-0-III
*M.G. v. Yakima School District No. 7*

from Eisenhower High School. The school district afforded him no hearing before or after it rendered this decision. The school district's counsel rendered this ruling without granting M.G. any right to appeal or a hearing. Thus, we do not defer to the agency's decision or the factual findings of the hearing officer.

M.G. challenges the Yakima School District's failure to follow the statutory procedures governing his return to school. This assignment of error requires us to interpret relevant statutes and apply them to undisputed facts. We review de novo questions of statutory construction. *In re Post-Sentence Review of Allery*, 6 Wn. App. 2d 343, 346, 430 P.3d 1150 (2018). The superior court simultaneously denied M.G.'s motion for summary judgment and granted the school district's motion to dismiss. We review both of these trial court actions de novo. *Eugster v. State*, 171 Wn.2d 839, 843, 259 P.3d 146 (2011).

We proceed to examine whether the Yakima School District violated state law by precluding M.G. from returning to Eisenhower High School. Chapter 28A.600 RCW and 392-400 WAC govern student disciplinary matters. RCW 28A.600.015(1) affords the superintendent of public instruction authority to adopt reasonable rules prescribing the substantive and procedural due process guarantees of all students in public schools.

Under RCW 28A.600.015, school districts may adopt informal procedures to govern short-term suspension of students to the extent constitutionally permissible.

23

No. 38165-0-III
*M.G. v. Yakima School District No. 7*

Nevertheless, RCW 28A.600.015 precludes an expulsion or suspension of a student for

an indefinite time.  The relevant subsections of the statute declare:

> (4) School districts may not impose long-term suspension or expulsion as a form of discretionary discipline.
> (5) Any imposition of discretionary and nondiscretionary discipline is subject to the bar on suspending the provision of educational services pursuant to [RCW 28A.600.015(8)].
> (6) . . . "[D]iscretionary discipline" means a disciplinary action taken by a school district for student behavior that violates the rules of student conduct adopted by a school district board of directors under RCW 28A.600.010 and this section, but does not constitute an action taken in response to any of the following:
> . . . .
> (d) Behavior that adversely impacts the health or safety of other students or educational staff.
> (7) . . . [S]chool districts are not required to impose long-term suspension or expulsion for behavior [defined in subsection 6] and should first consider alternative actions.
> (8) School districts may not suspend the provision of educational services to a student as a disciplinary action.  A student may be excluded from a particular classroom or instructional or activity area for the period of suspension or expulsion, but the school district must provide an opportunity for a student to receive educational services during a period of suspension or expulsion.

Consistent with RCW 28A.600.015, WAC 392-400-430 declares:

> (8) End date.
> (a) An expulsion or suspension of a student may not be for an indefinite period of time and must have an end date.
> (b) If a school district enrolls a student in another program or course of study during a suspension or expulsion, the district may not preclude the student from returning to the student's regular educational setting following the end date of the suspension or expulsion, unless:
> (i) The school district superintendent or designee grants a petition to extend a student's expulsion under WAC 392-400-480;

24

No. 38165-0-III
*M.G. v. Yakima School District No. 7*

> (ii) The student is excluded from the student's regular educational setting in accordance with WAC 392-400-810; or
> (iii) The student is otherwise precluded under law from returning to the student's regular educational setting.

The last exception applies to students who commit certain criminal offenses against their teachers or classmates and permits the school to prevent that student from being assigned to a teacher victim's classroom or to remove that student from the classroom of a student victim. RCW 28A.600.460(2)-(3),

Yakima School District concedes that none of the exceptions listed in WAC 392-400-430(8)(b) apply. The school district instead asserts broad statutory authority to prohibit M.G.'s return based on safety concerns due to M.G.'s gang affiliation. We disagree.

School districts possess statutory authority and responsibility to maintain order and discipline in their schools and to protect the health and safety of their students. *York v. Wahkiakum Sch. Dist. No. 200*, 163 Wn.2d 297, 332, 178 P.3d 995 (2008) (Johnson, J., concurring). The legislature granted school districts "broad discretionary power to determine and adopt written policies not in conflict with other law" to develop and implement programs that "[p]romote the effective, efficient, or safe management and operation of the school district." RCW 28A.320.015(1)(a). A school district has a duty to exercise reasonable care, as a reasonably prudent person would under the

25

No. 38165-0-III
*M.G. v. Yakima School District No. 7*

circumstances, to protect students in its custody. *N.L. v. Bethel School District*, 187 Wn.

App. 460, 469, 348 P.3d 1237 (2015), *aff'd*, 186 Wn.2d 422, 378 P.3d 162 (2016).

Yakima School District highlights its own policy as justification for excluding

M.G. To repeat, District Operational Procedure 3131 states, in relevant part: "The

district makes placement decisions based on . . . student academic interest and ability,

student social development, special education . . . and *student disciplinary or safety*

*circumstances*." CP at 147 (emphasis added). The school district argues this policy

permits it to prevent M.G. from in-person attendance because of his intimidation of other

students and his continued gang affiliation as shown by his insistence on wearing his

hairstyle. Nevertheless, a school district's policy cannot conflict with state statutes.

We do not deny Yakima School District all action to ensure the safety of its

students. The school district may petition for an extended expulsion based on safety

concerns. WAC 392-400-430(8)(b)(i); WAC 392-400-480(1)(d)-(e). Nevertheless, the

school district did not follow these procedures. Instead, it extended M.G.'s long-term

suspension for an indefinite period of time in violation of RCW 28A.600.015(1).

M.G. also contends that his unending suspension breached his constitutional right

to due process. Because we resolve the appeal on other grounds, we do not address

M.G.'s constitutional argument.

M.G. insists that the Yakima School District discriminates against minority

students in its application of disciplinary rules. In turn, the school district requests that

26

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 38165-0-III
*M.G. v. Yakima School District No. 7*

we strike filings with this court, on this subject, that M.G. never showed to the superior court. We do not address this motion because our ruling moots the motion.

CONCLUSION

We remand to the superior court for further proceedings consistent with our opinion.

The majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, J.

WE CONCUR:

_____
Lawrence-Berrey, A.C.J.

_____
Staab, J.

27